ANN LOHMAN, *alias* Madame RESTELL, *vs.* THE PEOPLE.

Mere surplusage in an indictment will not vitiate, and therefore where an indictmen alleges facts which constitute a misdemeanor, it will be good for that offence, although it state other facts. which go to constitute a felony provided all the facts alleged fall short of the charge of felony, in consequence of some other fact essential to that charge, *e. g.* the intent of the party accused not being averred.

By statute (*Laws of* 1845, *ch.* 260, § 2) it is a misdemeanor to administer drugs &c. to a pregnant female *with intent to produce a miscarriage;* and by statute (*Laws of* 1846, *ch.* 22, § 1) it is manslaughter to use the same means *with intent to destroy the child,* in case the death of such child be thereby produced. The indictment charged all the facts necessary to constitute the crime of manslaughter, except the intent with which the acts were done, and in its conclusion it characterized the crime as manslaughter; but the only intent charged was an *intent to produce a miscarriage;* HELD that the indictment was fatally defective for the felony, but good for the misdemeanor, and that the accused was properly convicted of the latter offence.

A conviction for a misdemeanor under such an indictment would, it seems, be a bar to a subsequent indictment for the felony. The record would be conclusive evi-

Lohman *v.* The People.

dence that the acts were done with the intent alleged in the indictment, and therefore the people could not allege a different intent, so as to constitute a different offence.

A juror being challenged to the favor testified before the triers, that he had formed no opinion and had no impressions as to the guilt of the prisoner, but that it had been and was still his impression that the general character of the prisoner was bad. The question was then put to the juror whether he would disregard what he had heard and read, and render his verdict according to evidence. Objected to, and exception taken. *Held* that the question, although inartificially put, substantially called for the consciousness of the juror as to his ability to try the cause impartially, and therefore that it was properly allowed.

A witness is privileged from answering a question when the answer would tend to disgrace him, unless the evidence would bear directly upon the issue; and therefore, where the answer could have no effect upon the case, except as it might impair the credibility of the witness, *held* that he was privileged.

Where the cross-examination of the principal witness for the people was conducted in a manner tending to impair her credibility, and to show that the prosecution was the result of a conspiracy in which she was concerned; *held* that it was competent to sustain the witness, by showing that another person, to whom the facts had become professionally known, wrote to the public authorities, and was the cause of the prosecution being instituted.

THE defendant was convicted in the court of general sessions of the city and county of New-York, under the second section of the act to prevent the procurement of abortion, passed in 1845, and sentenced to imprisonment in the county jail. The judgment of the court of sessions was affirmed on a writ of error, by the supreme court, (*see* 2 *Barb. Sup. Court Rep.* 216,) which last decision the defendant removed by writ of error into this court.

The first section of chapter 22, (*Sess. Laws of* 1846, *p.* 19,) enacts in substance, that every person who shall administer to any woman pregnant with a quick child, any medicine, drug, &c. or shall use any other means *with intent thereby to destroy such child,* (unless the same are necessary to preserve the life of the mother,) shall, in case the death of the mother or child be thereby produced, be deemed guilty of manslaughter in the second degree. The second section repeals the first section of the act to punish the procurement of abortion, passed in 1845; and the first section above quoted is a transcript of the section repealed, with the addition of the words, "in case the death of such child or mother be thereby produced."

The second section of the act of 1845 provides, that if tne means mentioned in the first section are used "*with intent to procure the miscarriage of such woman,*" the offender shall be punished by imprisonment in the county jail, &c.

All the counts in the indictment averred an intent upon the part of the defendant " to procure the miscarriage of Maria Bodine," varying only as to the means used, and alleging that " by means thereof the death of the child was procured." The several counts then conclude as follows : " And so the jurors aforesaid do say, that the defendant the said quick child in the manner and by the means aforesaid, feloniously and wilfully did kill and slay, against the form of the statute."

At the trial, one Cortelyou was called as a juror, and challenged to the favor by the defendant, which was denied by the people ; and upon the issue thus joined the juror was sworn as a witness for the defendant, and testified that he had formed no opinion as to the guilt of the prisoner ; that what he had read made no impression upon his mind ; that he did not think he had ever read a full statement of the case ; that he did not think he had any impressions as to the guilt or innocence of the prisoner ; but it had been and was his impression that the general character of the defendant was bad. On his cross-examination he was asked by the counsel for the people the following question : " If you were sworn as a juror in this cause would you disregard what you have heard or read out of court, and render your verdict upon the evidence ?" The question was objected to as irrelevant, as calling for the *opinion* of the witness, and as substituting his judgment for that of the triers. The court overruled the objection, and the defendant ex cepted.

Upon the trial Maria Bodine, the person named in the indictment, was called as a witness by the people, and testified that she went to live with one Cook in the month of July, 1845, that she had intercourse with him about a month after, which was continued to May, 1846, at which time she discovered that she was pregnant. Upon the cross-examination, the counsel for the defendant proposed the following questions to the witness

which she declined to answer upon the ground that they would tend to *disgrace her.* " Had you any sexual intercourse with any other person than Cook prior to April, 1846 ? Had you during the fall of 1845, or winter of 1846, the venereal disease ? Had you any sexual intercourse with any other person than Cook between July, 1845, and April, 1846 ?" The court refused to compel the witness to answer, and to this decision the defendant excepted.

After a protracted cross-examination of Maria Bodine, one object of which was to *impair the credit* of the.witness, the counsel for the people called Dr. Smith as a witness, who testified to an examination of Maria Bodine, made by him in May, 1847, and as the result of that examination, his opinion as a physician, 1st, that the female must have been delivered of a child badly managed, or 2d, that an abortion must have been procured upon her, or 3d, that there had been some mechanical injury, or injury by some instrument, or violence.   He was then asked by the prosecution the following question : " In consequence of your examination, and the opinion you formed, and in consequence of a communication confidentially made to you as a physician by Maria Bodine as your patient cotemporaneously with your examination, what steps did you take ?"  On inquiry by defendant's counsel, the counsel for the people avowed the object of the question to be in substance to sustain the testimony of Maria Bodine, by showing by the witness that he wrote to the mayor of New-York, and was the cause of the prosecution being instituted.   To the question, and the offer of the counsel for the people, the defendant objected ; the objection was overruled and an exception was taken.

*E. Sandford,* for plaintiff in error.

*J. McKeon,* (district attorney,) for the people.

. *By the Court,* GARDINER, J.   The indictment is defective under the first section of the act of 1846, in omitting to charge an intent to destroy the child by the means employed by the

defendant. It contains all and more than is necessary to consti
tute a misdemeanor within the 2d section of the act of 1845.

Mere surplusage will not vitiate the indictment, and of course
is no ground for reversing the judgment. (*People* v. *Jackson*,
3 *Hill*, 94, *and cases cited.*)

It is contended, however, that the prisoner, notwithstanding
this conviction, may be indicted for manslaughter, adding to
the charges in this indictment the intent to destroy the child.
If this were admitted it would furnish no ground for reversal.
The offences created by the first section of the act of 1846, and
the second section of the act of 1845, are separate and distinct,
as the counsel for the defendant strenuously insists. The pris-
oner has been found guilty of a misdemeanor; and I do not
perceive how this court, in face of the verdict and the record,
can assume that the defendant has been guilty of a felony.

Upon the same principle, if the defendant had been convicted
of an assault and battery, we might have been asked to reverse
the judgment, because she might have been guilty of a battery
with intent to kill. To constitute a felony, nothing would be
necessary but to add the intent to the other allegations of the
indictment.

But in the second place, I incline to the opinion that the de-
fendant could plead this conviction in bar to a subsequent
indictment for the felony, under the first section of the act of
1846. The right does not result from the doctrine that a party
cannot be put a second time in jeopardy for the same offence,
because as we have seen the offences under the 1st and 2d sec-
tions, are distinct, but from a principle of wider application,
namely, that the accused may always avail himself of the plea
of a former conviction, if the record shows affirmatively that the
defendant could not have been guilty of the crime charged in
the indictment.

The difference in the offences as laid *in this indictment*, and
the felony under the 1st section of the act of 1845, t is said
truly, consists solely in the *intention* of the criminal—the
means of their commission and the consequences in either case
being precisely the same. Now to constitute a misdemeanor

under the statute, the indictment must *allege*, and upon con-
viction the jury must *find*, that the means charged were used
with *the intent* to *procure a miscarriage*.   The people there-
fore would be concluded by the record from alleging, in a sub-
sequent indictment, that the prisoner employed the same means,
upon the same person and occasion, with a different design.

A conviction for manslaughter is a bar to a subsequent in-
dictment for murder.   The distinction in the offences consists
in the intent with which the homicide is committed.   The record
of conviction would show, in effect, that the killing was without
malice, and would be conclusive upon the people and the accused.
(*Chit. Cr. L.* 456 ; *Coke's R. part* 4, 146.)   The case of *Rex*
v. *Cross*, (1 *Ld. Raym.* 711,) cited by the defendant, is an au-
thority to show that where the *same* facts which constitute a
misdemeanor at common law, are made felony by statute, the
indictment must be for felony.   The case in 5 *Mass. R.* 106,
and 9 *Cowen*, 578, decide that where a conspiracy is consum-
mated, you cannot separate the agreement to conspire from
the overt act by which it is accomplished.   These are all in-
stances of merger, and have no application to a case like the
present, where the offences created by the 1st and 2d sections
of our statutes are conceded to be separate and distinct.

As to the question put to the juror Cortelyou.   The issue
to be tried was whether the juror stood indifferent between the
parties.   This of course depended upon his state of mind.   To
ascertain this was the object of the examination of both parties.
Upon an issue of this kind, from the nature of the fact to be
established, the opinion of the juror derived from his own con-
sciousness, was relevant, competent and primary evidence.
The interrogatory put was in form exceedingly inartificial,
but its effect (and to this only the objection applies) was obvi-
ously to elicit an opinion as to the strength of the impression to
which he had previously testified, and whether he was conscious
of the ability to render a verdict according to the evidence not-
withstanding.   If the juror answered in the affirmative, it
would have been a declaration that he possessed such ability.
This would be but an opinion, but one founded on his own

Lohman v. The People.

consciousness, and so far entitled to the consideration of the triers, although by no means conclusive upon them. If he had responded in the negative, the answer would (if believed) have been decisive against his competency. For although a man may think himself impartial when he is not, he cannot be a competent juror if conscious of an inability to render a verdict without being influenced by previous impressions. The question then was equivalent to asking the juror whether he felt or was conscious that he could render an impartial verdict notwithstanding all that he had heard or read. This in effect was the question put and sustained by the supreme court, in *The People* v. *Bodine*, (3 *Denio*, 122.)

As to the questions proposed to Maria Bodine. It is hardly necessary to say that the answers sought to these questions would have disgraced the witness. She was therefore privileged from answering unless her answers were material to the issue. Her pregnancy was, it is true, one of the facts to be established by the prosecution, but whether induced by Cook or any other person was entirely immaterial. If her response had been in the affirmative to each of these interrogatories, it would not have been inconsistent with, or tended to disprove the fact of her pregnancy, or the agency of the prisoner in procuring the miscarriage, any farther than those answers affected her general character. The privilege of witnesses has been carried much farther in some of the cases, but all the authorities agree, that where as in this case, the object of the question is to impair the credibility of the witness, she could not be compelled to answer. (*People* v. *Mather*, 4 *Wend.* 250, *and cases cited; Cowen & Hill's Notes*, No. 521, *and cases cited;* 1 *Burr's Trial*, 244; 1 *Greenl.* § 454.)

As to the exception to the question proposed to Dr. Smith. It is now said that the question assumes two facts, viz. 1st. that Maria Bodine had made a confidential communication to the witness, and that he took some steps in consequence thereof; and 2d. that the communication, if made as assumed, was privileged. If this were true, the answer is, that these matters were not suggested upon the trial, nor was the attention of the

court directed to them. The objection was of the most general character. The opinion formed by the witness upon the examination testified to by him, aided by communications from the patient as to her symptoms and the state of her health, was not only competent evidence, but strongly corroborative of her testimony. (1 *Greenl.* § 102.) It was a part of the *res gestæ.* If the physician was thereby induced (even if it was not the sole motive) to resort to the public authorities for the purpose of further investigation, I can perceive no objection to the fact being proved. The cross-examination of Maria Bodine, as is manifest from inspection, was designed to discredit her with the jury. She had stated in answer to the defendant's inquiries, the fact of her making a written statement at Walden, which she delivered to officer Boyer at that place, and minutely the circumstances of her visit to New-York after the crime was committed, and of her attendance before the grand jury. Now the defendant is not at liberty to say that this examination was irrelevant—and it could only be material with a view to impeach the veracity, or the motives of the witness, by showing her agency in procuring the indictment. In either view, the testimony of Smith was important, as it went to corroborate her statement and vindicate her motives.

We think there was no error in the judgment of the supreme court.

Judgment affirmed.