By the Court, Bockes, J.
The plaintiff in error was indicted for administering, or causing and procuring to be administered, to one Julius Denny, a deadly poison, with intent to kill. He was convicted and sentenced at the St. Lawrence Oyer, February, 1865.
The indictment charged an offense under section thirty-seven of article two, title two, chapter one, part four of the Revised Statutes (2 R. S. 666, § 37), which provides that “ every person who shall be convicted of having ¡administered, or of having caused and procured to be administered, any poison to any other human being, with intent to kill such being, and which shall have been actually taken by such being, whereof death shall not ensue, shall be punished by imprisonment in a State prison for a term not less than ten years.”
The indictment contains four counts. The first charges that the plaintiff in error administered to Julius Denny a deadly poison, to the jury unknown, with intent to kiU, and that the same was actually taken by him. The second charges that ■ he administered to Denny a deadly poison, known as strychnia, with intent, &c. The third charges that he caused and procured to be administered to Denny *377 a deadly poison, known as strychnia, with intent, &c. And the fourth charges that he administered, and caused and procured to be administered, to Denny a deadly poison, known as strychnia, with intent, &c.
In the fourth count it is stated how he administered the poison, and caused and procured it to be administered, to wit: “By then and there mingling, and then and there causing and procuring said poison to he mingled with the food of him, said Denny; ” and how it came to be taken by Denny, to wit: “By means of the mingling with the food as aforesaid, and hy means of the causing and procuring to he mingled with the food as aforesaid.” It will be observed that the italicised words charge no distinct offense, but are an amplification only of the material averments. At most they are but surplusage, and therefore harmless. (Lohman v. The People, 1 N. Y., 379.) Had the explanation or amplification been stated under a videlicit, perhaps it would have been deemed so far material as to have required proof in its support. But even if we apply this rule, we feel, in recurring to the evidence, that the explanation stands as well proved as do the material charges and averments.
I now propose to examine the ease in the order in which the questions are presented by the counsel for the plaintiff in error, in his printed brief. It is urged that the first and second counts of the indictment stand wholly unproved, inasmuch as there is no evidence that the prisoner adminis* tered the poison. It is true there is no evidence showing that he administered the poison by an actual personal manual delivery of it to Denny. But the evidence tended to show that he obtained the poison, and himself placed it in or on the food which he knew was prepared for Denny’s immediate use, and thus furnished it to him. He supplied the poison, and it was taken through his management and instrumentality. To administer medicine, is to direct and cause it to be taken. In Rex v. Harley (4 Car. & Payn, *378 368), the placing of poison in a coffee pot which contained coffee intended for immediate use, and which was immediately drank at breakfast, was held to be an “ administering.” It seems, therefore, that there was evidence in the ease tending to show, and, if credible, clearly showing, that the prisoner administered the poison to Denny, with the intent charged. It cannot, therefore, be said that the first and second counts of the indictment stand unproved against the general verdict of guilty found and rendered by the jury. The public prosecutor was not bound to elect on which count he would proceed. The indictment was evidently framed to meet the exigencies of the trial, having in view but one offense, under the statute above cited. In such casé it is common and admissible to state the offense with variations, to meet anticipated objections on the ground of variance between the case stated in the indictment and the proof.
The Chancellor says, in Kane v. The People (8 Wend., 211), it is every day’s practice to charge a felony in different ways in several counts for the purpose of meeting the evidence as it may turn out on the trial. Each of the counts on the face of the indictment purports to be for a distinct and separate offense, and the jury very frequently find a general verdict on all the counts, although only one offense is proved.
He adds, “if the different counts are inserted in good faith for the purpose of meeting a single charge, the court will not compel the public prosecutor to elect. (3 Hill, 159; 5 Park. Cr. R., 39.) Besides, it is in the discretion of the court to compel , the district attorney to elect on which count he will proceed, when distinct felonies are charged in different counts, hence not reviewable. on writ of error. (3 Hill, 159.) The indictment was framed under a statute to meet a particular case, with several counts—all, however, having reference to the offense denounced by the statute and requiring the same judgment. The verdict is a general *379 verdict of guilty. If it can be seen on a proper application of the evidence that the conviction is right on either count, it is enough, and judgment duly pronounced will be sustained, although it should appear that some of the counts stand unproved. (3 Hill, 213, 214.) And it was held in the Court of Appeals (5 Park. Cr. R., 31), that when a verdict of guilty was rendered upon an indictment containing several counts relating to the same transaction, it was proper to pass judgment on the count charging the highest grade of offense. The rule is the same when there are several counts, one of which is bad; in such case a general verdict of guilty will be upheld if there be one good count to which the evidence can properly apply. (1 Park. Cr. R., 202; Ibid, 246; 4 Ibid, 26; 1 John., 320.) I do not mean to intimate that either count of the indictment in this case stands unproved. On the contrary, the evidence bears upon the charge as stated in each count, and we may, and I think should, .hold the prisoner convicted by the jury of all that is charged against him in the indictment and necessary to be proved.
It is urged that the fourth count is bad for duplicity. The statute declares that “ every person, who shall be convicted of having administered, or of having caused and procured to be administered, any poison,” &c., shall be punished as therein stated.
In the fourth count it is charged that the prisoner did administer, and did cause and procure to be administered, &c. Are two distinct offenses here charged? In the case of The Commonwealth v. Eaton (15 Pick., 273), the prisoner was indicted under a statute which declared that, “If any person shall sell or offer for sale,” any lottery ticket, &c., and in the indictment it was charged that he, “ did unlawfully offer for sale and did unlawfully sell,” with other formal averments. On demurrer, on the ground of duplicity, the court held that the offering for sale and selling constituted but a single offense, and overruled the demurrer." In *380 the case of The Commonwealth v. Twitchell (4 Cush., 74), it was held that in an indictment on a statute of Massachusetts, by which the setting up or promoting of any of the exhibitions therein mentioned without license therefor, was prohibited, it was not duplicity to allege that the prisoner did set up and promote such exhibition. The case of The State v. Price (6 Halst.; 203), is more directly in point, if possible. The statute was “burn or cause to be burned,” and it was laid “ burned and caused to be burned.” The indictment was held good. In these cases it was adjudged that the indictments charged respectively but a single offense; that the offer for sale and selling was to be deemed one act and offense; so as to setting up and promoting; and the same as to burning and causing to be burned.
In analogy to these cases, the charge here that the prisoner administered and caused and procured to be administered, &c., was a charge of single offense. The charge in effect is that he caused and • procured the poison to be administered by his own act—that is, that he administered it, and thus, and by such act, caused and procured it to be administered. (4 Car. & Pay., 368.) It seems that the count is not had for duplicity, hence no error was committed by the court, in refusing to strike it out for that reason.
It is urged that the court erred in overruling the objection to the production and identification of the slung shot, mentioned in the evidence, and seen in the possession of the prisoner. The evidence of guilt in this case was to a considerable extent circumstantial. No one saw the crime committed. The state of the prisoner’s mind towards Denny was, therefore, a fact of importance in the case. So, it was competent to show that the prisoner had threatened to injure him, with a view to show that he held enmity, and entertained towards Denny a malicious intent. For this purpose, it was proved that, a short time prior to the procuring and administration of the poison, the prisoner had in his possession an instrument which he said “was *381 going through Julius’ head,” and called it a “ slung shot.” This evidence was admissible, inasmuch as it tended to show that the prisoner was unfriendly towards Denny, and entertained a purpose to do him personal injury. It was competent to call out a description of this instrument in order to understand how, and with what effect it could be used. If, it was proper to describe or name the instrument, it was equally proper to produce and identify it. It is said that by admitting this evidence another and distinct- offense was proved against the prisoner. But that is admissible in many cases with a view to show vindictive feelings and malicious purposes. (3 Park. Crim. R., 681.) In my opinion, the production and identification of the slung shot were plainly admissible on the trial.
The prisoner’s counsel proposed to show, on the cross-examination of Mrs. Denny, and also by other witnesses, that she was in the habit of having sexual intercourse with various men, several of whom were named.
The testimony of Mrs. Denny was important; indeed, without it there could not have been a conviction of the prisoner. It was of the utmost consequence to him, therefore, to impeach her credit. It already distinctly appeared that she was the confederate of the prisoner in the crime for which he was being tried, and that she had lived in adulterous intercourse with him for a long time prior to its commission. In addition to this, the prisoner’s counsel proposed to prove that she was in the constant habit of having sexual intercourse with other men. The evidence was objected to as immaterial and excluded. The evidence proposed to be given by the witness Seguin was clearly improper for the purpose of general impeachment. This was a collateral issue and on the trial of it, inquiries as to particular acts of immorality were inadmissible. The reasons are that it would be impossible for the witness to be prepared for a defense of particular acts, and it would lead to an indefinite number of issues. Therefore, on an issue upon *382 the character of a witness, it cannot be allowed to inquire into particular facts. Witnesses called to general character maybe interrogated as to the reputation and standing of the person whose character is assailed, but they are not allowed to speak of particular instances of vice or immorality. (19 Wend., 569, 580; 14 Wend., 105, 110; 18 Wend., 146; 6 N. Y, 97.) In the case cited (18 Wend., 146), it was held that a party could not inquire whether the witness had the general reputation of being a thief, prostitute, murderer, adulterer, or the like, but that the inquiry must be general in its scope and tendency. (36 Barb., 44.) It seems, therefore, that the offer to prove, by the witness Seguin, that Mrs. Denny had lived for several years prior to the poisoning in adulterous intercourse with him, and with other men, was properly overruled..
It is insisted, however, that Mrs. Denny could have been interrogated, on cross-examination, in, regard to specific.acts of immorality, with a view to show her unworthy of credit. The two questions put to her on cross-examination and excluded were these: “Were you in the habit of having sexual connection with other men than your husband, before you had carnal connection with La Beau? ” “ Were you not in the constant habit of having sexual connection with Lawrence Marney, David La Venture, Charles Seguin and A. Seguin for the last four years? ” Undoubtedly, the witness might have refused to answer, on the ground of privilege. This precise point was decided in Lohman v. The People (1 N. Y., 379, 385). But the objection to the question was taken by the counsel for the people and not by the witness, and was placed on the ground of immateriality. Neither the court nor the district attorney had the right to object on the ground of privilege. That objection was personal to the witness. (6 Cow., 254; 1 Denio, 281, 314; 6 Hill, 144; 4 Park. Crim. R., 184.) Were the questions then irrelevant and immaterial ? Certainly; they were immaterial to the issue of guilt or innocence of the *383 prisoner. The purity or impurity of the witness had no direct bearing on the charge that the prisoner had administered poison, or caused and procured it to be administered to Denny. But the answer sought by the question bore on the collateral issue as to the credibility of the witness. The questions were so far irrelevant to the main issue, that the party would have been compelled to accept the answers, had answers been given, without the right to contradict them. Still, it is contended that the right existed in the absence of any claim of privilege from the witness, Mrs. Denny, to show her unworthy of credit by interrogating her on cross-éxamination in regard to particular acts of immorality and vicious practices. There are cases where such inquiries may be made; as, for instance, on the trial of a person for rape, or an assault and battery with intent to commit a rape. In those cases the prosecutrix may be asked whether she had had previous carnal intercourse with other, men. (19 Wend., 192.) The question, however, is there material to the main issue, to wit: The willingness or reluctance of the prosecutrix. In England, disparaging questions like these, excluded in this case, have been in general disallowed. • In McBride v. McBride (4 Esp. R., 242), a witness for the plaintiff was asked, on cross-examination, whether she slept with the plaintiff. The interrogatory was not allowed. In McBride v. McBride (4 Esp. R., 243),. a female witness was asked whether she lived in a state of concubinage with the plaintiff. It was overruled. In Bex v. Lewis (4 Esp. R., 225), the witness was asked whether he had not been in the house of correction. The question was disallowed. In Dodd v. Bovin (3 Camp., 519), the question was put to a female witness whether, before her acquaintance with the defendant, she had not been criminal with other men. It was disallowed. In Rex v. Pitcher (1 Car. & Pay., 85), it was held on the trial of an indictment of a female for larceny in a certain house, that the prosecutor could not *384 be asked whether anything improper passed between him and the prisoner at that house. These questions were all put on the cross-examination and disallowed. It is probable that objection was made in some instances on the ground of privilege, or at least that the ruling was on that ground, although it does not so appear from the reports. Mr. Greenleaf also indicates an opinion that such questions, when collateral to the issue on trial, should not be allowed. (Greenleaf Ev., § 448.) So, there are two cases at least, in this State, in which the same rule is intimated, if not in fact declared. In Ward v. The People (6 Hill, 144), the the question was put to a witness on the trial of an indictment for larceny, whether he did not steal the butter. On objection by the public prosecutor, the court overruled it. In speaking of this ruling, the Chancellor said: “The objection was properly sustained, upon the ground that the answer to the question was not relevant to the matter in issue. In Southard v. Rexford (6 Cow., 254), the witness was asked whether he ever knew of any person having criminal connection with the plaintiff. The question was disallowed, but on the ground of privilege. On reviewing this case, Sutherland, J., expressed an opinion that the question, in the absence of objection from the witness, on the ground of privilege, should have been allowed. But, in this case, the question was considered by him as material to the matter in issue.
On the other hand, Boscoe says, in his Treatise on Criminal Evidence, that questions with regard to particular facts tending to degrade the witness and affect his character and credit, may be put to him on cross-examination, even though irrelevant to the matter in issue; but the party putting them must be. satisfied.with the answer given by the witness, and cannot call witnesses to prove those answers false. This seems in conflict with the rulings in several of the cases above cited, but is, as I think, in consonance with the general current of authority in this *385 State until changed or modified by the recent decision in the Court of Appeals, hereafter alluded to.. In the People v. Bodine (1 Denio, 281-314), a witness was asked, on cross-examination, whether she did not, on a former trial, swear to the reverse of what she then stated in a certain specified particular. The court, at the trial, decided that the question was improper and inadmissible; to which ruling there was an exception. On reviewing the case, Beaedsley, J., in giving the opinión of the court, says: “I am unable to see in what respect this question was improper.” It was material, as the answer might show that the former and the present statement of the witness were contradictory, and thus affect her credit. In New-comb v. Griswold (24 N Y., 298), a witness was asked, on cross-examination, whether he had been convicted of petit larceny. The question was objected to and excluded, and the ruling was held correct, but on the ground that the party had a right to insist that the tact be proved, if at all, by the record. In discussing this case, Judge Allen takes occasion to say “that in the latitude of cross-examination, and to enable the jury to understand the character of the witness they are called upon to believe, collateral evidence, is allowed from the witness himself, tending to discredit and disgrace the witness under examination.” True, this is not a decision of the question under consideration, but it is entitled to .the highest consideration, especially as it received, for aught that appears to the contrary, the approbation of the entire court. In the People v. Blakely (4 Park. Crim. R., 176),. the point was directly and expressly decided. It was there held that it was competent to ask a witness, on his cross-examination, with a view to affect his credibility, whether he had not been guilty of adultery and had a venereal disease since his marriage. It was here decided that the party was entitled to this question as a matter of right, subject to objection from the witness that he was privileged from, answering, *386 and the judgment was reversed and a new trial ordered, for the error in overruling the question. But, I understand, that the rule laid down in this case is qualified, if not repudiated, by the recent decision in the Court of Appeals, in the case of The Qreat Western Turnpike Co. v. Loomis, not yet reported. I understand it to be there decided that the right to put questions to a witness tending to disgrace him is in the discretion of the court, and therefore not reviewable on' appeal or writ of error except in case of manifest abuse of such discretion, and not a matter of right, as was held in the People v. Blakely. I have only the head notes of the case before me, but it seems to be there decided that while it is often admissible on cross-examination of a witness, with a view to affect his credibility, to interrogate him as to specific acts of immorality, no objection being interposed on his part, yet the extent of the examination and what particular questions may be asked are matters of discretion with the original tribunal, and not subject to review unless in cases of manifest abuse and injustice. The head nóte is as follows: “ The court in which a case is tried, in the exercise of its discretion, may exclude disparaging questions, not relevant to the issue, on the cross-examination of a- witness, although, put for the avowed purpose of impeaching his general credit; and this may be done on the objection of the party, without putting the witness to his claim of privilege.” This decision must, I apprehend, overrule the case of the People v. Blakely, in so far as it holds that the asking of questions disparaging to the character' of .the witness is a matter of right to a party on cross-examination. It seems necessary that the examination of a witness upon collateral matters should be regulated by the direction of the judge before whom the examination takes place; otherwise a trial might be improperly and almost interminably protracted; and it should be so too with a view to protect witnesses from painful and vexatious impertinences. If there is nothing sus *387 picious in the evidence given by the witness, nor in his manner of testifying, nor in his position or relation to the case, it is unjust to him to permit inquiries, which impute to him unfairness, immorality or crime: Nor can it be tolerated that every female witness may be insulted by coarse questions when required to testify in a court of justice.
It is proper that the cross-examination should be vigorous and searching, and it should often be allowed to extend to collateral matters, yet it should not be too inquisitorial; and the power to prevent abuse must rest with and devolve on the court or officer before whom the examination is had. It should not be left wholly to the option of zealous counsel, instigated, as will be the case in many instances, by an excited, prejudiced, and, perhaps, malicious client, to inquire needlessly into all the transactions of a life-time, to see if something may not be brought to light disparaging to the character of the witness. The asking of questions with the purpose of degrading the witness must be regulated by the discretion of the judge before whom the trial is conducted, and this must be the rule as regards the right of inquiry into all matters wholly collateral or immaterial to the issue. Undoubtedly, cases will often arise where the court, in the exercise of a just and liberal discretion, will permit inquries on cross-examination, which, if answered affirmatively, will tend to degrade the witness. The allowance of this course of examination falls within the rule of discretion laid down in the case cited. • If the statements, conduct or position of the witness be such as to arouse suspicion of his fairness and integrity, a great latitude should be indulged on cross-examination. Still, a rule should not be established which will leave a witness wholly at the mercy of a party or his counsel. The right of limitation must, therefore, rest with the court. It is said that every one should so conduct as to leave his life open to scrunity, or accept the consequence of his own folly or wickedness. But if the right of cross-examination, *388 as to questions degrading to the witness, is made to rest wholly with the party, any. one, however blameless and pure may have been his life, may still be subjected to smarting indignities and humiliations. It seems appropriate, therefore, to leave the question as to the extent of the examination in such cases, and as to what particular questions may be asked, with the original tribunal, and it must follow that its decision in that regard is not open to review, except in cases where there has been a manifest abuse of discretion. Such is not- this case. Questions calling for answers disparaging to the character of the witness were here put and answered. It was a very proper case in which to admit that line of examination. The witness was the accomplice of the prisoner in the crime for which he was being tried, and was his paramour. She had lived in adulterous intercourse with the prisoner for s long time, and confederated with him to take the life of her hnsband.
. These facts appeared from her own statements and admissions on the witness stand. It does not seem that the party was limited or restricted in his general cross-examination. Two questions only were excluded, which, if answered affirmatively, would not have rendered the character of the witness any more disreputable or odious than it- already appeared. It cannot, therefore, be fairly charged that the discretion of the judge in excluding them was unfairly exercised. So, error cannot be predicated on the ruling complained of. The general tenor of the trial shows that it was not the intention of the court to deprive the counsel of a very fair and full examination of the witness, in regard to her character and habits of life. One of the questions was doubtless excluded because of its immateriality even to the collateral issue of credibility. The question was this: “ Were you not in the constant habit of having sexual connection with Lawrence Marney, David La Venture, Charles Seguin and A. Seguin, for the last four years ? ” It was wholly immaterial to the issue, as to her credibility, *389 whether she had had sexual intercourse with these particular persons. While her answer in the affirmative would, if credited, have disgraced them, it would not have affected the credit to be given to her testimony any the more than if names had been omitted. And if the answer had been in the negative, the party would have been compelled to accept it without the right to contradict it. It is plain that there was no necessity for interrogating her as to these particular men, or as to any particular men, and it was a proper exercise of discretion in the court to exclude the question, for the reason that it needlessly involved the character of third persons. It would be manifest injustice to permit their characters to be assailed needlessly, without the right on their part to speak in their own defence. The other question was this: “ Were you not in the habit of having sexual intercourse with other men than your husband before you had carnal connection with La Beau.” . She had testified that she had been accustomed to sleep with La Beau for over two years. The question, therefore, related to her conduct two years and more prior to the inquiry. The limitation of the inquiry as to time was certainly discretionary with the court, and in that view the rejection of the question cannot be urged as ground of error. But, apart from any other consideration, we must adhere to the rule that the extent of the cross-examination of a witness, with a view to affect his credibility as to collateral matters, and what particular questions may be asked, are matters of discretion with the original tribunal, and not subject to review, except in cases of manifest abuse and injustice. This.case does not fall within the exception, hence error cannot be predicated on the ruling of the court.
I have considered all the points urged by the counsel for the plaintiff in error, and find no ground for disturbing the judgment of the Oyer, and must advise its affirmance.
Judgment affirmed.