city. The plaintiff asks that the court, while the action is pending, issue an order commanding the defendant to reinstate plaintiff. Mandatory injunctions are at all times granted with extreme caution, and, as a general rule, are never granted pendente lite, or where the relief asked for is doubtful. High, Inj. 82; 10 Am. & Eng. Enc. Law, 789; Jameson v. Insurance Co., 14 App. Div. 380, 44 N. Y. Supp. 15. Plaintiff also asks that the defendant be restrained pendente lite from appointing any one in plaintiff's place. Such an injunction should not be issued, because it would be likely to prevent the defendant from, or impede him in, carrying on the duties imposed on him by law. For the reasons above stated, the motion is denied, and the injunction heretofore granted is vacated, with $10 costs to abide the event.

Motion denied, and injunction vacated, with $10 costs to abide event.

---

(43 App. Div. 472.)

### PEOPLE v. KANE.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. CITY OFFICERS—PROHIBITED CONTRACT—DEFECTIVE INDICTMENT.

Under Greater New York Charter (Laws 1897, c. 378) §§ 419, 1551, which provide that any head of a department who shall let a contract for public work, involving the expenditure of more than $1,000, without advertising for bids, and without a contract in writing or specifications, and security for the faithful performance of such contract, shall be guilty of a misdemeanor, an indictment which charged a head of a city department with employing another to clean receiving basins, without advertisement, and without a contract in writing or specifications, and without requiring security, does not charge an offense, since it does not show that it involved the expenditure of more than $1,000.

2. SAME—CERTIFICATE OF NECESSITY.

Under Greater New York Charter (Laws 1897, c. 378) § 419, which provides that no expenditure involving an amount for which no contract is required shall be made, except the necessity therefor be certified to by the appropriate head of the department, and the expenditure has been duly authorized and appropriated; and section 1551, which provides that breach of the provisions of the charter by a city officer shall be a misdemeanor,—an indictment which charges that defendant, while an officer of the city government, did employ one C. to perform certain public work, and did incur an expenditure for said work, without having the necessity therefor certified by the head of the appropriate city department, and without a certificate that the expenditure had been duly authorized and appropriated, does not charge an offense, as section 419 does not prohibit the making of a contract, but the payment thereunder without the appropriation and certificate; nor does it charge an attempt to commit the offense.

3. INDICTMENT—INCONSISTENT PARAGRAPHS.

Under Code Cr. Proc. § 278, which provides that an indictment must charge but one crime, and in one form, except as provided in section 279, which provides that a crime may be charged in separate counts as having been committed in a different manner and by different means, an indictment consisting of one count, one paragraph of which charges facts inconsistent with the facts charged in another paragraph, is bad.

4. CITY OFFICERS—APPROVAL OF BILLS—INDICTMENT.

Under Greater New York Charter (Laws 1897, c. 378) § 1551, which provides that any officer of the city government who shall commit any fraud on the city shall be guilty of a misdemeanor, an indictment which alleges

that defendant approved certain bills (stating their amount), well knowing
that no contract had been entered into for such work as required by law,
and that such acts were in violation of law, and were done with the in-
tent to commit a-fraud on the city of New York, does not charge an offense,
as it does not charge that the approval of such bills created a charge
against the city, nor does it charge an attempt to commit the offense pro-
hibited.

Appeal from trial term.

James Kane was indicted, as an officer of the city of New York, for
defrauding the city government. A demurrer was interposed to the
indictment, and from a judgment sustaining it (61 N. Y. Supp. 632)
the people appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Hiram R. Steele, Dist. Atty., for the People.
Robert H. Elder, for respondent.

HATCH, J. The learned judge below has so carefully examined
the indictment which is the subject of this appeal that our labor is
much reduced in disposing of the questions raised. We agree in
the disposition of the case which has been had, and in the main with
the reasons assigned in the convincing opinion which accompanied
the judgment. The principles which must govern in the construc-
tion of this indictment are fairly well supported by authority, and are
more or less familiar. The indictment is framed upon section 1551
of the Greater New York Charter (Laws 1897, c. 378), which is as fol-
lows:

"Any officer of the city government, or person employed in its service, who
shall wilfully violate or evade any of the provisions of law, or commit any
fraud upon the city, or convert any of the public property to his own use, or
knowingly permit any other person so to convert it, or by gross or culpable
neglect of duty allow the same to be lost to the city, shall be deemed guilty of
a misdemeanor, and, in addition to the penalties imposed by law, and on con-
viction, shall forfeit his office, and be excluded forever after from receiving or
holding any office under the city government; and any person who shall wil-
fully swear falsely in any oath or affirmation required by this chapter shall be
guilty of perjury."

It is evidently essential, under the provisions of this statute, for
the pleader to aver facts showing that the person charged was an
officer of the city government; that he willfully violated or evaded
a provision of law, or committed a fraud-upon the city, or converted
public property to his own use, or knowingly permitted another per-
son so to convert it; or, by gross or culpable neglect of duty, allowed
the property of the city to be lost. If the pleader has stated a case
showing that the defendant has committed any one of these acts, or
all of them, if associated by averment proper in form, then he will
have made a case which requires the defendant to plead thereto upon
the merits. The offense, however, must be stated, and, to accomplish
that end, nothing is to be taken by way of intendment, as the pre-
sumption is that every man obeys the law; and, when a given act is
attacked, it rests upon the asserting party to distinctly negative the
affirmative condition created by the presumption.

In the main, the pleader in the present case has attempted to bring

the defendant within the terms of the act creating the offense, by setting forth that, in his capacity as commissioner of sewers of the city of New York, he violated a provision of law in contracting for the performance of certain city work without having taken the steps required by law to regularly contract for the same. While the indictment is subdivided into parts, yet the pleader evidently intended to charge but one offense. The first averment to show that the defendant willfully violated a provision of law is founded upon the requirement contained in section 419 of the charter. By the terms of that section it is provided:

"All contracts to be made or let for work to be done * * * except as in this act otherwise provided * * * shall be made by the appropriate heads of departments under such regulations as shall be established by ordinance or resolution of the municipal assembly. Whenever any work is necessary to be done * * * or any supply is needful * * * and the several parts of the said work or supply shall, together, involve the expenditure of more than one thousand dollars, the same shall be by contract, under such regulations concerning it as shall be established by ordinance or resolution of the municipal assembly * * * and all contracts shall * * * except as herein otherwise provided, be founded on sealed bids or proposals, made in compliance with public notice, duly advertised. * * * The bidder whose bid is accepted shall give security for the faithful performance of his contract."

By section 413 of the charter it is provided:

"Except as herein otherwise provided, any public work or improvement within the cognizance and control of any one or more of the departments of the commissioners who constitute the board of public improvements, that may be the subject of a contract, must first be duly authorized and approved by a resolution of the board of public improvements and an ordinance or resolution of the municipal assembly."

It is clearly evident that the provisions of these sections contemplate two classes of contracts,—one where the work to be performed or the supply furnished shall not exceed $1,000, and the other where it does exceed such sum. In the former there is no requirement for a written contract, and no bidding is contemplated; in the latter, such requirements are mandatory. To offend against such a statute, it must appear what the contract was, and wherein the law is violated. It is clear that, if the contract price is less than $1,000, such contract is excepted from the operation of the law requiring it to be let after bidding. As the provision is general, requiring sealed bids before a contract can be made, and applies to all contracts above $1,000, so those contracts below that sum constitute an exception thereto. Such is the express language of section 413 ("Except as herein otherwise provided") and section 419. By the statute creating the exception, therefore, the pleader was required to show, if he claims that the contract was one which required sealed bids, and was for the expenditure of a sum above $1,000, that the contract was not within the exception; otherwise, no offense is stated. "If an exception occurs in the description of the offense in the statute, the exception must be negatived, or the party will not be brought within the description." Broom, Leg. Max. (8th Ed.) 678. This rule of pleading has been recognized from the earliest times; and while great difficulty may sometimes attend upon the determination of whether the matter in the statute constitutes the same a proviso, when the

rule is otherwise, and the pleader is not required to state it or nega-
tive it, or an exception, yet, when the latter is found to be the fact,.
the rule is uniform and absolute that it must be pleaded, or the plead-
ing fails.  Rowell v. Janvrin, 151 N. Y. 60, 45 N. E. 398.

The provision in this statute as to contracts not exceeding $1.000
is an exception to those contracts requiring sealed bids and proposals-
als.  Consequently we must see if the pleader has negatived it..
Turning now to the indictment, where the offense against this section
is claimed to be averred, we find:

"First.  That the said James Kane, while an officer of the city government
of the city of New York aforesaid, to wit, commissioner of sewers, did on the
4th day of January, 1898, award the work of cleaning the receiving basins
connected with, and forming a part of, the sewer system of the borough of
Brooklyn and city of New York, to one George Cunningham, and did employ
the said George Cunningham to perform such work at the price of four dollars
and seventy-five cents per basin, which was grossly in excess of the value
thereof, without advertisement, or procuring sealed bids or proposals for such
work, or otherwise inviting competition, and without contract in writing or
specifications, and without requiring security for the faithful performance of
said contract in the manner prescribed by law."

This averment states no more than to say that the defendant con-
tracted with George Cunningham to perform the work of cleaning
sewer basins, at the price of $4.75 per basin, without a contract in
writing, and without advertisement or sealed bids, and without re-
quiring security for faithful performance.  All of this may be admit-
ted, and yet the defendant act clearly within the law, and with the
most scrupulous regard for the interests of the city.  If the work
did not exceed $1,000 (and there is not a word to show that it did,
either in terms or of necessity), then what he did he had the clear
right to do.  Swift v. Mayor, etc., 83 N. Y. 529.  It follows that no
offense is stated in this paragraph of the indictment.

The second paragraph is equally faulty, for the reasons already as-
signed.  This assumes to state a violation of the charter provision
(section 413).  As we have seen, the very first word of this section is-
"Except"; and evidently where a resolution is required, as is therein
provided, it relates to contracts which exceed $1,000.

The third clause, dependent upon its construction, may be bad for
two reasons.  It avers:

"That the said James Kane, while an officer of the city government of the
city of New York aforesaid, to wit, commissioner of sewers, did, on the 4th day
of January, 1898, award the work of cleaning the receiving basins in the
borough of Brooklyn (the same being a part of the sewer system of the borough
of Brooklyn and city of New York) to one George Cunningham, and did employ
the said George Cunningham to perform said work, and did incur the expendi-
ture for said work, without having the necessity therefor certified by the head
of the appropriate department, to wit, the department of sewers, and without
a certificate that the expenditure had been duly authorized and appropriated, as
required by law."

This is based upon the last paragraph in section 419 of the charter,.
which reads:

"No expenditure for work or supplies involving an amount for which no
contract is required shall be made, except the necessity therefor be certified to
by the head of the appropriate department, and the expenditure has been duly
authorized and appropriated."

This clause does not relate to the contract itself. The language used excludes it. No expenditure is to be made, except the necessity be certified, and then only as authorized, and from an existing appropriation. "Expenditure" is here used in the sense of "payment." Such is its ordinary signification. No bill is to be paid unless the amount necessary therefor is appropriated. The apparent object of the provision was not to prohibit a contract, but to prohibit the expenditure of money therefor unless the right thereto was certified, and unless the fund existed from which payment might be made. There is no averment showing, in this view, any offense.

As we have before observed, this indictment, although divided into paragraphs, is nevertheless but one count. While the Code of Criminal Procedure provides that the crime may be charged as having been committed in a different manner and by different means (section 279), yet, where resort is had to this method of pleading, it must be by separate counts. The language of section 278 is, "The indictment must charge but one crime and in one form," except as provided in the next section. If any offense was committed under this clause of section 419 of the charter, then it was an offense committed by virtue of contracting for work which did not require sealed bids, etc., as it only relates to such contracts. We meet the same difficulty here that we have encountered before, except that the position is exactly reversed; for here the pleader met with a condition where he was required to plead the other exception, i. e. that it was a contract for which sealed bids, etc., were not required. In this he failed. If it be treated, as it must be, if it be anything, that the pleader was attempting to plead the same crime by different means, then it violated the provision of the Code of Criminal Procedure, and is not authorized by any system of criminal pleading of which we are aware. The acts averred in the first and third paragraphs are necessarily inconsistent. The first could only be an offense if a written contract based on sealed bids, etc., was required. The last could only be an offense by excluding and dispensing with the first. In this respect the pleading must fail. We also regard the fourth paragraph as failing to state an indictable offense. We think that this part of the indictment would have been good, as charging fraud upon the part of the defendant, had it alleged that the act of the defendant in approving the bills therein set forth created a charge against the city of New York, whether such act resulted in damage to the city or not. It is the act creating the charge, coupled with the intent to commit a fraud, which constitutes the offense defined in section 1551 of the charter; and it matters not that such acts fail of consummation, and the city suffers no damage therefrom. This count of the indictment, however, is destitute of allegation or words charging that the acts of the defendant created a charge against the city, or that it was one of the steps by which a charge might be created, or that the city could become liable to pay such or any claim by reason of the approval of such bills. All that the count charges is that the defendant approved certain bills for cleaning sewer basins (stating their amount), well knowing that no contract had been entered into for such work as required by law, and that such acts were in violation of law, and were done with

an intent to commit a fraud upon the city of New York. It is clear, therefore, that no crime was charged. All of these things, if done, could not by any possibility defraud the city; and, if it could not be defrauded by such acts, then certainly the acts themselves did not constitute a fraud, or an attempt to commit a fraud, within the meaning of the law, and no offense is therefore charged in this paragraph of the indictment. Nor is the indictment good as one charging an attempt to commit a crime. This is a distinct offense. Pen. Code, § 34. Where there is an offense stated, the jury may convict of an attempt to commit the crime, when they do not convict upon the main charge. Code Cr. Proc. § 444. But, as we view the indictment, it is not good as charging the offense, nor as charging an attempt to commit the offense.

The judgment should therefore be affirmed. All concur.

CULLEN, J. (concurring). I think this indictment is insufficient. The defendant was indicted, under section 1551 of the Greater New York charter, for, while an officer of the city government, violating the law, and committing a fraud upon the city, in awarding a contract for cleaning the receiving basins connected with the sewers, for the price of $4.75 a basin, to one George Cunningham, without advertisement or competition, which price is alleged to have been grossly in excess of the value of the work. I think it is wholly unnecessary to discuss the question, often mooted as to criminal pleadings, whether it is necessary to negative an exception in a penal statute, and whether a case excluded from the operation of the statute constitutes an exception within the rule or not. Under no system of pleading imaginable is it sufficient in an indictment to charge an act which on its face appears innocent and not forbidden by law. The sections of the Greater New York charter as to letting work by contract seem to be exact reproductions of similar provisions in the consolidation act of 1882 (Laws 1882, c. 410) and the charter of 1873 (Laws 1873, c. 335). The contract set forth in the indictment is for no particular number of basins, and was to continue for no particular time. It therefore was determinable at will, and did not necessarily involve any greater expenditure than for a single basin. It was held in Swift v. Mayor, etc., 83 N. Y. 528, that an indeterminate contract of this character did not fall within the charter provisions referred to. On the face of the indictment, therefore, the act done by the defendant, of itself, was innocent, and not criminal. It is alleged in the second paragraph that Cunningham was employed to do this work without having the work and expenditure authorized and approved by a resolution of the board of public improvements of the city, or by an ordinance of the municipal assembly, as required by law. I can find no provision of law that requires either, in the case of an expenditure of less than $1,000, not by contract. The third paragraph alleges that by this contract the defendant incurred an expenditure for said work, without having the necessity therefor certified to him by the head of the proper department (himself), and without a certificate that the expenditure had been duly authorized

and appropriated as required by law. I agree with Judge HATCH that this provision of section 419 refers to the payment of money by the comptroller. It was not a necessary prerequisite for the commissioner's action that he should certify to himself. It is not alleged in the indictment that the expenditure had not been authorized and appropriated according to law, but that no certificate had been made to that effect. I find no provision that requires any certificate of the character. A reference to the last sentence of section 419 of the charter shows clearly that it is only the necessity of the work that is to be certified. It may be well at this point to observe a misconception in reference to the charter provisions governing this work that runs through the counsel's argument, and may have affected the form of the indictment. The work, part of the ordinary maintenance of the department, may have been, and in all probability was, provided for in the budget fixed by the board of estimate; and at the time of the acts alleged to have been committed by the defendant the appropriation for his department depended solely on the action of that board, because of the hiatus between the time the two cities consolidated and the time when the first regular tax levy of the consolidated city should be passed. There is no allegation whatever in the indictment that the obligation for this work was incurred by the defendant in excess of or without any appropriation therefor, but only that there was no resolution of the municipal assembly or the board of public improvements for the purpose. The board of public improvements had, under the charter, general cognizance of the subject-matter of cleaning the sewers; and it may be that, if that board had passed a resolution directing that it be done by contract, it would have been incumbent upon the defendant to have followed that direction. In the absence of any action by the board of public improvements, he had the same power to employ Cunningham as any workman in the department. So much for the violation of express statutory provisions regulating the conduct of the city's business. It may be that the subdivision of the work into quantities sufficient to bring it under the $1,000 limit, and thus avoid competitive contracts, would be an evasion of the charter provisions, and, under the section first cited, an indictable crime. The difficulty is that the indictment does not contain a suggestion of such an offense. In an indictment of that character, assuming that it would lie, there should be an allegation that the officer knew or believed and expected that the aggregate work to be done would exceed $1,000, and that he made the contract indeterminate in form, and as not necessarily involving a greater sum, with the very intent to avoid the charter provision in that respect. An allegation of this character would be the very meat of an indictment for such an offense. Nothing of the kind is alleged. Other allegations might be necessary in the indictment suggested, which it is not for us to now consider. One has been given merely as an example. I am of opinion that if a public officer knowingly employs or contracts for services at an excessive price, with the intent to favor the individual and injure the city, it would be, of itself, indictable, either

as a completed act of fraud, or as an intent to commit a fraud, whether the contractor obtained the money or not. But here, again, the indictment is fatally defective. It charges that Cunningham was employed at a grossly excessive price, but it fails to allege that the defendant knew the price was excessive, or that his intention was to cheat the city in awarding it at such price. The scienter or intent is the very gist of either an indictment or a civil complaint, in a case of fraud.. Nor is the case helped out by the allegation of fraud or knowledge in the concluding paragraph of the indictment. There it is alleged that the defendant certified bills in favor of Cunningham for the work done under the contract, knowing that they were in excess of the true value of the work, with intent to defraud the city. It is not alleged or claimed, however, that the bills were in excess of the contract price. It may very well have been that the defendant knew when he certified the bills that they were in excess of the true value of the work; but if they were in accordance with a legal contract, previously entered into in good faith, it was his duty to certify them, whether the prices at which the work had been let were excessive or not. Some of these criticisms on the indictment may seem technical, but a good criminal pleading must necessarily be accurate and logical. No indictment for murder would be good unless it charged the intent to kill, and no detail in the narrative of the offense, showing the cruelty and deliberation with which it was perpetrated, could supply the absence of the allegation of intent, which is the gist of the crime. So in this case we have pointed out what are the essential elements of a proper indictment for fraud. The intent is a traversable allegation, with which the defendant can take issue, and which the jury must find before he can be convicted. The absence of a proper allegation is fatal to the pleading.

---

YOUNG et al. v. SYRACUSE, B. & N. Y. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. RAILROADS—INJURY TO EMPLOYE—NEGLIGENCE—SWITCHES.

Whether a railroad company was negligent in unnecessarily placing a switch just beyond a water tank, so that the danger signal thereon could not be seen till a train was within 60 feet of it, leaving insufficient time to stop the train, is a question for the jury.

2. PROXIMATE CAUSE.

Where a switch was left open by an unknown party, and a train ran into, it is for the jury to say whether negligence of the company in unnecessarily placing it behind a water tank, so that the danger signal could not be seen till the train was within 60 feet of it, whereas it could have been placed so that it could be seen 600 or 800 feet away, affording time for stopping the train, was a proximate cause of the accident.

3. ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

Whether the engineer of a train which ran into a switch, unnecessarily placed behind a water tank, so that the danger signal on it could be seen only 60 feet away, assumed the risk, or was guilty of contributory negligence, is a question for the jury, though he knew of the switch, and though rules of the company, of which he knew, required engineers to approach