# W. S. WISE AND H. L. ROSS *v.* TONG ONG, LAU ON, YOUNG KAT, LING KIT AND LUNG YEN.

### EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

### SUBMITTED JANUARY 3, 1905.　　DECIDED JANUARY 31, 1905.

### FREAR, C.J., HARTWELL AND HATCH, JJ.

JURORS—*not disqualified by reason of regarding white men more credible than Chinese.*

> A juror had said on his voir dire that he knew the plaintiffs; had seen one of the defendants in plaintiffs' office but had no acquaintance with him or the other defendants. In answer to the question, "Is this acquaintance with the plaintiffs such as would affect you where there was a dispute in the testimony as to which you would believe," he said "I would believe a white man before I would believe those fellows," (pointing to defendants). The other juror having said that he knew the plaintiffs, that his acquaintance with them was not such as to incline him in their favor, but thought that he would be "governed by the evidence and did not think he would be biased," was asked "Is there anything in your acquaintance which would incline you to give more credence to their testimony" (referring to plaintiffs) "than to the testimony of the others" (referring to defendants) "especially Chinese," said, "Well, I think I would; yes." Held: Following Queen v. Leong Man, 8 Haw. 339, that the jurors ·were not disqualified by reason of bias or prejudice against the defendants personally.

ID.—*evidence.*

> Evidence was properly admitted to the effect that the witness' clients engaged one of the plaintiffs to represent their interests in Honokaa and expressly requested the witness to act for them; that he gave his clients directions to employ the plaintiffs, advising them to "take the step we had decided upon," etc., and that the

"understanding as a result of that conference was that Mr. Ross of the firm of Wise & Ross was to look after the interests of the five defendants at Honokaa."

### OPINION OF THE COURT BY HARTWELL, J.

This was an action brought before the district magistrate of South Hilo, Island of Hawaii, on a claim of $75 for services performed by the plaintiffs for the defendants. The defendants appealed to the circuit court from a judgment in favor of the plaintiffs rendered by the magistrate. The plaintiffs' evidence tended to show that they were engaged by the defendants to defend them in a case and to charge a reasonable fee therefor in addition to what had been charged for previous work. This was denied by the defendants. The jury returned a verdict for the plaintiffs for the sum claimed and the case comes to this court upon the defendants' exceptions. The exceptions mainly relied upon were to the ruling of the trial judge allowing two jurors to sit at the trial of the case, one of whom, when examined on his voir dire, said he knew the plaintiffs; that he had seen one of the defendants in the plaintiffs' office, but had no acquaintance with him or with the other defendants, and in answer to the question, "Is this acquaintance with the plaintiffs such as would affect you where there was a dispute in the testimony as to which you would believe," answered, "I would believe a white man before I would believe those fellows," (pointing to defendants). The other juror having said on his voir dire that he knew the plaintiffs; that his acquaintance with them was not "such as to incline him in their favor," but that he thought he would be "governed by the evidence and did not think he would be biased," and when asked, "Is there anything in your acquaintance which would incline you to give more credence to their testimony" (referring to plaintiffs) "than to the testimony of the others" (referring to defendants) "especially Chinese," said, "Well, I think I would; yes." The competency of a juror who says that he would give more credence to the testimony of persons of one race than those of another was discussed in *Queen v.*

*Leong Man,* 8 Haw. 339 (1892). In that case a juror when asked, on the voir dire, "Do you believe that under our form of oath Chinamen are equally to be credited with a native Hawaiian or white man?" answered, "No, they are not." In answer to inquiry by the court the juror said: "I think I could try a case where there is Chinese testimony and weigh the evidence without prejudice if it had the impress of truth, but I have more confidence in a native's or white man's veracity. When a Chinaman is interested I have not equal belief in their veracity," adding "I would not throw out the testimony because the witness was Chinese. I would have less confidence in any witness interested than in one not interested. I could have nearly equal confidence in native or Chinese evidence if interested. Upon this the court said: "A juror to be impartial is not obliged to say that he will give equal credence to every witness that testifies, and when a juror says that where there is Chinese testimony he will weigh the evidence without prejudice if it has the impress of truth and would not discredit it because it was Chinese, he is not disqualified." It appeared further that the defendants' counsel might have challenged the juror peremptorily and did not do so. The court held that the juror was not disqualified, apparently basing its opinion to some extent upon the doctrine that "an erroneous overruling of an objection to a juror avails nothing to the defendant if he does not finally exhaust his peremptory challenges." That decision appears to control the present case.

In *Com. v. Poisson,* 157 Mass. 510, the trial judge declined to allow the following questions to be put to jurors: (1) "Have you any prejudice or bias against the sale of liquor that would prevent you from giving the same weight to the testimony of a person engaged in the sale of liquor, or who had been engaged in such business, that you would give to any other witness, so far as the occupation or trade of a witness would affect his credibility?" (2) "Have you any bias or prejudice against a person accused of the unlawful sale of liquor, and against whom some evidence has been offered tending to prove the

offense, that would prevent you from giving to the testimony of the accused the same weight that you would give to any other person accused of an offense, and against whom some evidence had been offered?" The court, Holmes, J., after remarking that "examination of jurors as to interest or bias in the cause * * * beyond the inquiries provided for expressly by the statute, was left to the discretion of the presiding judge," that "it would be unfortunate if all control of such an examination should be taken from the court," and that the statutory power of parties to examine witnesses "is in terms to make it under the direction of the court," held that the discretion "is exercised wisely by not going beyond the usual questions, unless something appears which makes it proper to go further." The court regarded the questions which the defendant wanted to have asked as going beyond those suggested by the statute without any manifest reason. "If a juror," said the court, "should admit that he regarded as more or less discredited a witness who, so far as the evidence had gone at the moment of his testifying, appeared probably to be a liquor seller, the admission would go only to the juror's general opinions concerning circumstances which affect the value of evidence. It is to get the benefit of such opinions formed by men of the world that jurors are summoned. It seems to us that the existence of such a one as we have supposed would not prevent the juror from standing indifferent in this particular case." In *Com. v. Porter,* 4 Gray 423, the defendant requested the court to ask the jury if "they had formed and expressed an opinion as to the credibility of one Boyd Howard, one of the witnesses by whom the government proposed to prove the offense charged." It was held that the judge properly declined to put the question. "The inquiry was novel, and, if competent, would certainly be a great relief to persons indicted, who are anxious not to be tried; for just in the degree that the character of the witnesses to be called was well known and respected, would the objection prevail. If the witness happened to be an individual known and revered by all his fellow citizens

as a man without reproach, every member of the panel would have formed an opinion as to his credibility." *Ib.*

In *Balbo v. People,* 80 N. Y. 484, the prisoner who was on trial for murder was an Italian. A juror, in answer to a question whether he had any prejudice in favor of or against the Italians as a race, said that it was "a race that he was not particularly fond of and did not think much of, judging from those we have here." The juror in response to questions of the court said that he did not suppose that any opinion he had would bias, influence or prejudice him in any manner in the consideration of the evidence. The prisoner having been convicted, the court upon exceptions held: "The fact that the juror may have had some prejudice against the Italian race was not, we think, a disqualifying circumstance. An opinion that the prisoner's character was bad is not a ground of principal challenge," (citing 1 N. Y. 379: 43 *Ib.* 28). "The fact that the juror did not like the race to which the prisoner belonged was quite too inconclusive to justify a finding that he was incompetent." *Ib.* 498. At a trial of a negro on a criminal charge jurors on their voir dire had said that they had prejudices against negroes; that they thought a white jury more competent to give the prisoner justice than a negro jury and that it was their opinion that the country would be better off without the negro, and that the colonization of the negroes was desirable. "These questions were all hypothetical and had no relation whatever to the case on trial. The jurors did not say that they had any prejudice against the accused or that they could not give him a fair trial." *State v. Casey,* 44 La. 970. In testing the qualification of jurors on the voir dire it is not a proper field of inquiry to interrogate a proposed juror as to the comparative credence that he would give to the evidence of persons belonging to the different races. *Jenkins v. State,* 31 Fla. 196, 12 So. Rep. 677. It is always the case that a trial judge can tell better whether a juror is biased or not than the appellate court can do. A juror's tone and manner would have much to do with indicating whether he had personal feeling for or against the parties, hence it is proper to leave con-

siderable discretion to the trial judge in passing upon the quali-
fications of jurors in respect of bias or prejudice. It is not
apparent that either of the two jurors entertained personal feel-
ing of prejudice or ill will towards the defendants. We construe
the answer of the first juror that he "would believe a white man
rather than those fellows" as indicating his belief in the general
superiority of white over Chinese testimony. We do not think
that this general mental attitude disqualifies a juror. The
defendants' attorney refrained from asking the juror whether he
would be biased or prejudiced by thinking that the testimony
of the plaintiffs would be the more credible. It is not requisite
for the impartiality of a juror that he consider all races and
nationalities on a par in respect of habits of veracity. In order
that an impartial trial may be had it is not requisite that jurors
regard the parties as equally worthy of credence. Trial by jury
of witnesses is a thing of the remote past; but an important
object of trying causes in the vicinage is that jurors are likely
to know the general character of parties and witnesses as well as
general conditions applicable to cases before them. If such gen-
eral acquaintance does not go to the extent of biasing or preju-
dicing it does not disqualify but enables jurors to give due
weight to testimony. For instance, most persons resident in any
community have a general reputation for truthfulness or the
reverse. Jurors having knowledge, as they are likely to have,
of such general reputation are not therefore to be rejected.
There is reason why character should tell, as it assuredly does
tell when public charges are made or controversies arise which
affect life, liberty, property or good name. The second juror
in this case said on his voir dire that he would give more cre-
dence to the testimony of the plaintiffs than of the defendants,
but that he would be governed by the evidence and did not think
he would be biased. The burden is upon the defendants to show
more fully than they have done that the juror had prejudice
against the defendants personally. Under the ruling in *Queen
v. Leong Man,* ubi supra, we do not think that on the showing
made either of the two jurors was disqualified.

The defendants' remaining exceptions, on which they rely in their brief, are to rulings which allowed a witness for the plaintiffs to testify in substance that the defendants as his clients engaged Mr. Ross to represent their interests in Honokaa and that they expressly requested the witness to act for them; that he gave his clients directions in regard to the employment of Wise & Ross to look after their interests in Honokaa, advising them that they "take the step that we had decided upon, having one to bear the brunt of the charge and pay the fine of $250 and Mr. Wise or Mr. Ross was to go to Honokaa to arrange that with the court at the Honokaa term in order to save the expense of the defendants going to Honokaa," and that the "understanding as a result of that conference was that Mr. Ross of the firm of Wise & Ross was to look after the interests of the five defendants at Honokaa." The appellants claim that this was permitting the witness to "tell the jury as a conclusion of law and fact that defendants and plaintiffs had an understanding, the result of which was a contract of employment."

We think the evidence was not objectionable. The exceptions are overruled.

*Carl S. Smith* for appellants.

The appellees pro se.