SUPREME COURT.   At Chambers, Auburn, June 8, 1858.   Before *Johnson,* J.

## THE PEOPLE *v.* ISAAC L. WOOD.

It is the duty of the officer to whom an application is made for an allowance of a writ of error and a stay of execution in a capital case, to deny the same if he is satisfied of the legality of the conviction.

On a trial for felony, separate and distinct felonies cannot be proved for the purpose of establishing the fact directly, that the prisoner commited the offence for which he is on trial, or for the purpose of raising any direct inference in the affirmative as to the principal issue; but such evidence is competent for the purpose of proving the existence of a motive to commit the crime in question, in cases where there is some apparent connection or relation between the imputed motive and the felonies proposed to be proved.

Motive is a minor or auxiliary fact, from which, when established in connection with other necessary facts, the main or primary fact of guilt may be inferred, and it may be established by circumstantial evidence, the same as any other fact.

It does not lie with the prisoner to object that the fact proposed as a circumstance is so heinous in its nature, and so prejudicial to his character, that it shall not be used as evidence against him, if it bears upon the fact in issue.

The proper inquiry when the circumstance is offered is, does it fairly tend to raise an inference in favor of the existence of the fact proposed to be established ? If it does it is admissible, whether such circumstance be innocent or criminal in its character.

THE prisoner had been convicted of murder at the Livingston Oyer and Terminer, and sentenced to be executed, and an application was made in his behalf for the

allowance of a writ of error, and a stay of the execution of the judgment.

*James Wood,* for the prisoner.

*A. A. Hendee* (District Attorney), for the people.

JOHNSON, J. — The principal ground on which the application for the writ of error in this case rests is, that upon the trial evidence was allowed against the prisoner, tending to prove that both previous and subsequent to the time of the alleged murder, for which he was then on trial, he had been guilty of other and separate acts of a felonious character, for which indictments were then pending against him. Such evidence was allowed on the trial of the indictment upon which the prisoner was convicted, but it was not offered or allowed upon the principal issue, nor for the purpose of raising any direct inference in regard to the existence of the main fact in controversy. It was offered and allowed distinctly and solely for the purpose of establishing the *quo animo,* the motive existing in the mind of the prisoner, which the prosecution assumed incited and moved him to commit the offence charged against him, and for no other purpose.

The indictment was for the murder of Mrs. Rhoda Wood, the wife or widow of David J. Wood, in whose family the prisoner resided. The theory of the prosecution was, that the prisoner's motive in committing the alleged murder was to obtain the property and estate of D. J. Wood, or some considerable portion of it. The prisoner was the brother of D. J. Wood, and, as the prosecution assumed, he supposed and believed that D. J. Wood was possessed of a large estate, which he coveted; and that a portion of this estate would come to him as one of the heirs, if D. J. Wood and his wife and children could be put out of the way; that to accomplish this object, and to enable himself to appropriate

a still larger share of the estate, by meditated forgeries and false claims against his brother, he commenced by murdering D. J. Wood, by administering to him arsenical poison, and shortly after, as the next step, he administered at the same time, the same poison, with the like intent, and for the same object, to Mrs. Wood and the two children, upon whom the law, at the death of D. J. Wood, had cast the whole estate; that having succeeded in destroying the life of Mrs. Wood, but failed in the attempt upon the lives of the two children, he immediately procured himself to be appointed guardian of the persons and estate of the children, and then commenced creating and uttering various false and forged claims against the estate, one of which was a note for $2650, purporting to have been given by D. J. Wood to the prisoner over a year before the death of the former, which the prisoner turned out to his creditors in the city of New-York, soon after the death of Mrs. Wood and his assumption of the guardianship of the children.

It was assumed and claimed by the prosecution, that these several felonious acts were but parts of a single transaction, influenced by a single motive, and designed to accomplish a single object. That they were all connected by unity of plot and design, and, if proved, would tend to show the motive which actuated the prisoner in taking the life of Mrs. Wood. Accordingly, evidence was allowed tending to show the commission of all these alleged felonious acts by the prisoner, for the purpose of establishing the assumed motive. The case being one of circumstantial evidence wholly, proof of the existence of a criminal motive in the mind of the prisoner to commit the act was essential to making out a case against him which would justify a verdict of guilty. That the evidence tended directly to uphold the theory, and to establish the imputed motive, cannot, I think, be denied or doubted, and the only question is, whether evidence of that character is admissible for the purpose for which it was allowed to be given in this case. There can

be no question that the acts, the declarations, and the conduct generally, of a party charged with the commission of an offence, both before and after its alleged commission, are competent to be proved upon the trial, to establish any fact essential to be proved, if they tend legitimately to establish such fact, and they are as competent to establish the existence of motive as any other fact. Motive is a minor or auxiliary fact, from which, when established in connection with other necessary facts, the main or primary fact of guilt may be inferred, and it may be established by circumstantial evidence the same as any other fact. The proper inquiry, when the circumstance is offered, is, does it fairly tend to raise an inference in favor of the existence of the fact proposed to be proved. If it does, it is admissible, whether such fact or circumstance be innocent or criminal in its character. It does not lie with the prisoner to object that the fact proposed as a circumstance is so heinous in its nature, and so prejudicial to his character, that it shall not be used as evidence against him if it bears upon the fact in issue.

The atrocity of the act cannot be used as a shield under such circumstances, or as a bar to its legitimate use by the prosecution. If it could, many criminals might escape just and merited punishment solely by means of their hardened and depraved natures. The rule appears to me to be well settled, both by elementary writers and by adjudged cases, that separate and distinct felonies may be proved upon a trial for the purpose of establishing the existence of a motive to commit the crime in question, even though an indictment is then pending against the prisoner for such other felonies. I might cite many elementary books and numerous cases where the rule is thus laid down, but it is unnecessary. Indeed, there is no authority to the contrary. It is quite true that the prosecution cannot prove the commission of another and distinct felony by the prisoner for the purpose of establishing the fact directly that he committed the one for which he is then on trial, or for the purpose of raising any direct infer-

ence in the affirmative of the principal issue. The civil law allows such evidence against a criminal on trial for the purpose of rendering it more probable that he is or may be guilty of the offence charged. But the common law, with more humanity and better logic, forbids such evidence in support of the principal issue, and limits its admission to minor issues, such as motive and *scienter*, and even then confines it to cases where there is some apparent connection or relation between the imputed motive or guilty knowledge and the felony proposed to be proved. There is no pretence that the jury were not fully and carefully instructed as to the proper object and office of the evidence complained of, nor is there the slightest reason to apprehend that it was either misunderstood or misapplied by them. I am clearly of opinion, therefore, that no error was committed in admitting the evidence for the purpose for which it was offered, and that no injustice has been done to the prisoner in its application by the jury. One or two other minor grounds were suggested on the application for the allowance of the writ, but they do not seem to me to raise any serious question for consideration, and could not, obviously, have operated in the slightest degree to the prejudice of the prisoner. Such being the case, as it presents itself to my mind, I am unable to see upon what grounds I can allow the application. The true rule to be observed, in granting or refusing such applications, by the judge to whom they are made, is well stated by Chancellor WALWORTH, in considering the application of John C. Colt to him for a similar writ, after his conviction for the murder of Adams, where he says that "it is the duty of the officer to whom the application is made to disallow the same, if he has no reason to doubt the legality of the conviction." ( 1 *Park. Cr. R.*, 611.) This is obviously the intention of the statute in causing the application to be made upon notice to the district attorney or to the attorney-general, and in not allowing the writ, as matter of right to the prisoner, after conviction.

If I entertained any reasonable doubt as to the legality of the conviction, I should certainly give the prisoner the benefit of it, and allow the writ and stay the execution. But the case has been twice tried before me at the Oyer and Terminer, and I have been previously led to examine all the questions now presented, with much care and I may add with no little solicitude ; and I entertain no doubt whatever, either of the legality of the conviction or of the justice of the verdict. Thus viewing the case and the questions involved in the application, I have not, as I conceive, the right to interpose and arrest the due execution of the judgment.

The application is therefore denied.