## Oyer and Terminer—Erie County.

*Buffalo, August,* 1883.

## PEOPLE *v.* LYON.

PECULATION (L. 1875, ch. 19), IS A MISDEMEANOR.—DISTINCTION BETWEEN FELONY AND MISDEMEANOR.—EVIDENCE.— INTENT.—WEIGHT OF GOOD CHARACTER.

The common law distinction between felony and misdemeanor is still preserved in this state, and where the statute is silent as to the grade and character of an offense, it must be resorted to, to determine them.

Peculation (*L.* 1875, ch. 19), is a misdemeanor.

A provision in the act for an imprisonment in a state prison does not necessarily make the offense a felony, but the other provision thereof, that the punishment may be limited to a nominal fine, makes it a misdemeanor only.

Under a conspiracy with one Bork, who was a member of defendant's firm of Lyon & Co., and also treasurer of the city of Buffalo, Bork, at various times, embezzled moneys of that city and placed them in the business of Lyon & Co. During the temporary absence of defendant from the state, Bork, under this corrupt understanding, so embezzled moneys of the city and placed the same in the business of that firm. *Held,* that as this act took place in pursuance of a preconcerted plan of defendant and Bork to defraud the city, defendant might be convicted of the conversion, though he was, at the time of the abstraction of the money and placing the same in the

business, out of the state, and had no personal knowledge of this particular transaction.

When guilty knowledge or an intent to defraud is made an ingredient of a crime, acts of a similar character indicating such knowledge or intention on the part of the accused may be proved, and the circumstance that such evidence may establish that defendant has committed another offense does not render the proof incompetent.

To show guilty knowledge of defendant, it was proper for the prosecution to prove several instances in which Bork used the funds of the the city in the business of Lyon & Co. which occurred after the time of the alleged conspiracy, up to and including the transaction set forth in the indictment.

The jury were properly instructed that under the statute the offense was not complete unless there was an intent to cheat and defraud on the part of defendant, and that it was a question of fact for them to determine on all the evidence; that if they should find that there was an intention on the part of defendant to return the money to the city, that would not of itself, prevent a conviction, but if such intent existed on the part of defendant at the time he received the money, it was evidence in his favor on the question of intent. The court properly refused to charge that if there was in fact an intention to repay the city, then there could not exist a criminal intent to cheat and defraud within the spirit and meaning of the statute.

The court charged that evidence of defendant's good character was pertinent upon the question of his guilt, and should be duly weighed by them, that it might be assumed that a person possessed of a good character would not commit the offense imputed to defendant; that good character was not a controlling item of evidence, but was to be considered with all the other proof, and should have greater weight when the evidence against the accused was circumstantial than when it was direct and positive, and that it was for the jury to determine how much force and reliance should be placed on the same, in the face of all the evidence in the case. *Held*, that such instruction was proper.

Motion by defendant for a new trial.

The defendant, James S. Lyon, was convicted of peculation under *L.* 1875, ch. 19, by wrongfully obtaining, receiving, etc., money of the city of Buffalo.

The grounds of the motion and the facts fully appear in the following opinion.

*Frank Brundage* and *Henry F. Allen*, for defendant.

*Edward W. Hatch*, district attorney, for the people.

BARKER, J.—On a prior day of this term the defendant was convicted of the offense charged in the indictment.

The defendant moves for a new trial on a case and exceptions.

The indictment is grounded on chapter 19, Laws of 1875, entitled "An act to provide more effectually for the punishment of peculation and other wrongs affecting public moneys and rights of property." Section 1 creates and defines the offense, and is as follows : "Every person who, with intent to defraud, shall wrongfully obtain, receive, convert, pay out, or dispose of, or who, with like intent, by willfully paying, allowing or auditing any false or unjust claim, or in any other manner or way whatever, shall aid or abet any other in wrongfully obtaining, receiving, converting, paying out, or disposing of any money, funds, credits, or property, held or owned by this state, or held or owned, officially or otherwise, for or on behalf of any public or government interest, by any municipal or other public corporation, board, officer, agency or agent of any city, county, town, village or civil division, subdivision, department or portion of this state, shall, on conviction of such offense, be punished by imprisonment in a state prison for a term not less than three years or more than ten years, or by a fine not exceeding five times the loss resulting from the fraudulent act or acts which he shall have committed, aided or abetted, to be ascertained, as hereinafter mentioned, or by both imprisonment and fine."

The indictment in substance charges that on the 14th day of September, 1875, Joseph Bork was treasurer of the city of Buffalo, and as such officer was custodian of the moneys and funds belonging to the city, and had in his possession large sums of money, and on that day defendant wrongfully and fraudulently received from the hands of Bork the sum of twenty-two hundred dollars, the funds and money of the city. Bork was the city treasurer for the period of four years, from January, 1872, until the 31st day of December, 1875. During all this time the defendant and Bork were copartners, as bankers and real estate agents, their offices being in the city of Buffalo. As bankers the business was carried on under the firm name of Lyon & Co.; as real estate agents under the style of Lyon, Bork & Co., each member giving active and personal attention to the business. Soon after Bork was inducted into office he commenced

abstracting funds in his hands as city treasurer, and using the same in the copartnership business; at the end of his term of office the sums thus purloined amounted in the aggregate to over four hundred thousand dollars. The moneys were abstracted in various ways and on many different occasions, before and after the passage of the act mentioned. In some instances cash on hand was taken directly from the drawers and safe in the city treasurer's office and there used in that business. In other instances, bonds issued by the city and duly authorized by law were negotiated by Bork, in his official capacity, in the city of New York, for and on account of the city of Buffalo, and a portion of the proceeds of such sales was by his direction deposited to the credit of Lyon & Co., with their correspondents in that city, and the same was afterward drawn out on their drafts and on their account. On the books kept by Lyon & Co. entries were made of these transactions, plainly indicating that the funds of the city were being used in the business carried on by Bork and the defendant.

The defendant resided in the city of Buffalo, and when in town he visited the business office daily, having an opportunity to inspect the books containing such accounts. The evidence fully tends to prove, and to my mind satisfactorily establishes, that on the day mentioned in the indictment, under the personal direction of Bork, twenty-two hundred dollars, consisting of cash items, was taken from the city treasurer's office, being the funds of the city, and used in the banking business of Lyon & Co. It is conceded that, on the day this transaction occurred, Lyon was not in the city, but was in the territory of Utah, where he had been for several weeks prior to this occurrence. It was not claimed on the trial, nor is it now insisted upon, by the people, that the defendant had personal knowledge of the conversion and use of this particular sum of money. The theory of the prosecution is, that prior to this time and soon after Bork became treasurer, and before the passage of the act upon which the indictment is based, that Bork and the defendant combined together, planned and arranged, that whenever the business in which they were engaged as copartners should be in need of money beyond their own resources, Bork should supply the same out of the money and funds in his hands as city treasurer,

and that such arrangement continued and was acted upon up to and including the time when the sum was taken as charged in the indictment. That all the money which Bork did, in fact, take from the funds of the city and use in the copartnership business, was with the actual consent of Lyon, and in pursuance of the original understanding and conspiracy.

That the prisoner had personal knowledge that moneys belonging to the city were being used in the copartnership business, is overwhelmingly established by the evidence. That he was aware of the fact from about the time the first sums were taken, cannot be doubted ; that he never protested against the practice, and used in his private business, in an indirect manner, a portion of the proceeds, is, to my mind, abundantly proved.

The verdict is not against the weight of evidence, but is firmly sustained by it. Every fact upon which the people relied, to sustain a conviction, is supported by evidence and circumstances so convincing in their character that no impartial and intelligent man can doubt as to the truth of the same.

The correctness of some of the rulings on the trial depends upon the question whether the offense created by the statute is a felony or a misdemeanor. The statute creates and defines the offense and provides for its punishment. The grade of the offense is not mentioned in the statute nor classified as a felony or a misdemeanor. On conviction, the punishment to be inflicted is largely in the discretion of the court; it may be imprisonment in the state prison for a term of years—not less than three or more than ten—or by a fine not exceeding five times the loss resulting from the fraudulent act, or by both such imprisonment and fine.

The provision for an imprisonment in a state prison, a degrading punishment, does not necessarily make the offense a felony ; but the other provision that the punishment may be limited to a mere nominal fine, makes it a misdemeanor only— and such was evidently the intention of the legislature. The discretion vested in the court, to grade the punishment, is exceptionally large. It will be observed that for wrongfully converting the smallest sum of money, with an intent to cheat and defraud, the offender may be sentenced to imprisonment for the full period of ten years, and for purloining an amount as

large as the sum which was used in the defendant's business, the punishment may be limited to a nominal fine.

In this state there are no general statutes defining a felony, nor naming the offense which may be deemed one. The common law distinction between felony and misdemeanor is preserved and continued, and when not declared by statute, the same must be resorted to determine the grade and character of the offense. By the common law felony is defined "as an offense which occasions a total forfeiture of either lands or goods, or both, and to which capital or other punishment may be superadded, according to the degree of guilt." *Blacks. Com.* 94.

The statutory definition of felony, as given in the second Revised Statutes, 702, section 30, does not make the offense created by this statute a felony. That section provides that the term "felony," when used in any statute, shall be construed to mean an offense for which the offender on conviction shall be liable by law to be punishable by death or by imprisonment in a state prison. It purports to give a statutory definition of the word "felony" when used in a statute, and does not assume to define the meaning of the term felony except when it is used in some statute. The enactment upon which the indictment is based does not use the term felony. This section does not declare that every offense punishable in a state prison is a felony, nor does such a conclusion necessarily follow from its language. Fasset *v.* Smith, 23 *N. Y.* 252; Mowrey *v.* Walsh, 8 *Cow.* 238.

As an offender convicted of a felony is deprived of many of the privileges of citizenship, and stands degraded in the minds of the public more than if convicted of a misdemeanor only, it is important that the offense created by this statute be properly classified, and I am of the opinion that it is not a felony. As the sum of money mentioned in the indictment was, in fact, transferred to the business of the defendant, he is brought within the provisions of the statute, and is guilty of receiving and converting to his own use public money belonging to the municipality of the city of Buffalo. The same having been accomplished through his own pre-arranged plan with the city treasurer, the act was in every sense wrongful, and, upon all the evidence, a case was made for the jury to say whether it was done with an intent to defraud the city. An attempt is made to

escape criminal liability, for the reason that at the time the offense was consummated by transferring the fund from the city treasury to the banking business of the defendant, he was out of the state, and did not personally do the act which completed the offense. The prisoner is indicted as principal and not as an accessory. In misdemeanors, all guilty participators are held and treated as principals. The jury having found that the money was taken by Bork, and used in the co-partnership business, in pursuance of a pre-existing arrangement between Bork and the defendant, the act of Bork, his instrument, is in the law deemed his own act. The circumstance that Bork was a guilty and not an innocent agent, does not change the law. If the crime was of the grade of a felony, then the rule would be different, for when an offense of that grade is committed, through the agency of a guilty instrument, the principal is regarded as an accessory before the fact, and must be indicted and tried as such. In the case of a felony, however, if the agent be innocent, for reason of lunacy, idiocy, or other cause, then the procurer may be indicted as principal. As to the correctness of these propositions, there is no controversy, as they are fundamental and recognized in our criminal law. People v. Erwin, 4 Denio, 129 ; Irvine v. Wood, 51 N. Y. 224 ; Wixson v. People, 5 Park. 121 ; Russell on Crimes, 27.

As it was not necessary for the defendant to be present at the time the crime was consummated, to make him a guilty party, it is wholly immaterial whether he was within or without the state at the time the money was purloined from the city treasury. He cannot be heard to say that he was beyond the jurisdiction of the state. Our laws were violated by the act and procurement of the prisoner, although he was absent at the time, and cannot claim that he was guiltless. Every act which constitutes the crime charged in the indictment was done and performed within our jurisdiction ; the money abstracted was owned by a municipality created by the laws of this state—it was used and converted in the business of the defendant, carried on here ; his accomplice was a local officer, having the lawful custody of the money misappropriated. The defendant did no act, while absent from the state, which aided in the consummation of the crime that he planned before his departure. If he

is not amenable to the laws of this state, then he must be regarded as entirely guiltless, as he has not violated the laws in any other state. The prisoner is a citizen of this state, and owes allegiance to its laws ; having entered into a conspiracy to violate the same, for his own personal gain and advantage, he should not escape punishment because the act which he planned was accomplished during his temporary absence from our jurisdiction. If this were so, our criminal laws could be violated with impunity and rogues would have the advantage. The protection from punishment, which the defendant seeks in the proposition presented, is repudiated and condemned in many well considered cases both here and in England. People v. Adams, 3 *Denio*, 190, affirmed in 1 *N. Y.* 173 ; King v. Johnston, 7 *East*, 65 ; People v. Erwin, 4 *Denio*, 128 ; People *ex rel.* Sherwin v. Mead, 28 *Hun*, 227 ; affirmed in the Court of Appeals, 1883.*

On the trial the people were permitted to prove, by Bork as a witness, several instances in which he used the funds of the city in the business of Lyon & Co., which occurred after the time of the alleged conspiracy, up to and including the transaction set forth in the indictment. This evidence was objected to on the part of the defendant as incompetent and immaterial, and as tending to prove violations of the statute not set forth in the indictment. The objection was overruled and the defendant excepted. The evidence thus objected to and received, related to numerous transactions, tending to prove the conversions of sums of money belonging to the city and used in the business of Lyon & Co. The proof was confined to transactions which took place after the time of the alleged conspiracy, and none of the evidence was received until after the evidence had been given tending to prove that such plan and scheme had been entered into between the prisoner and the witness. At the time the evidence was received, it was ruled by the court and the jury were then instructed that the evidence was not received, and should not be used by them with a view of establishing that the sum of money mentioned in the indictment was, in fact, taken from the city treasury and used in the business of Lyon & Co.;

* Reported 1 *N. Y. Crim. Rep.* 417.

but that the evidence was received for the purpose, and could be only used to establish guilty knowledge on the part of the defendant, and to prove that the $2,200 was received with an intent to defraud the city. With this limitation placed upon the evidence, it was, in my opinion, competent. The other evidence in the case tended to prove that a scheme and plan had been entered into between the witness and the defendant to divert to their own use the money of the city as the banking business required. Such proof also tended to establish in a very striking manner that such money was being so withdrawn from the city treasury by Bork with the prisoner's consent and used in the business with which he was connected. In addition to proving the actual wrongful conversion of the sum of money mentioned in the indictment, it was incumbent upon the people to prove that the same was done with an intent to defraud the city. As bearing upon the question of intent, it was pertinent to prove the aggregate amount of the money loaned in pursuance of the conspiracy and all the circumstances connected with each conversion of the funds of the city. This evidence was competent for the purpose for which it was received, although it may have established that the defendant was guilty of other offenses, not charged in the indictment.

The general rule is against receiving evidence of another offense. There are, however, some exceptions to this; when guilty knowledge, or an intent to defraud, is made an ingredient of the crime, then other acts of a similar character, indicating guilty knowledge on the part of the accused, or of an intent to to cheat and defraud, may be proved, and the circumstances that such evidence may establish that other offenses have been committed by the defendant does not render the proof incompetent. This is now a well-established proposition and it was so held in the following cases. Coleman v. People, 55 *N. Y.* 81 ; Bielschofsky v. People, 3 *Hun,* 40 ; People v. Wood, 3 *Park. Cr.* 681 ; Pierson v. People, 79 *N. Y.* 424 ; Weyman v. People, 4 *Hun,* 511; 1 *Greenl. Ev.* § 53 ; People v. Dowling, 84 *N. Y.* 486 ; Pontius v. People, 82 *N. Y.* 347 ; Commonwealth v. Eastman, 1 *Cush.* 189 ; Commonwealth v. Miller, 3 *Cush.* 250 ; Commonwealth v. Merriam, 14 *Pick.* 519 ; Commonwealth v. Tuckerman, 10 *Gray,* 173.

All the evidence received related to the misappropriation of public moneys belonging to the same municipality, converted by the same parties, and devoted to the same use, in pursuance of a conspiracy entered into prior to any of the transactions to which the evidence related. The offense charged in the indictment is based upon an alleged illegal act, which was one of a series of acts of a similar nature, constituting a part of one continuous transaction. The evidence presented by the people, taken together, tended to prove that all the money misappropriated by Bork was with the consent, and received the approbation of, Lyon; that he was conscious from first to last that funds were brought into the copartnership business which came from the city treasury. The sums so transferred were on occasions so near each other and so many of them entered on the copartnership books, that it may in all reason be regarded as a continuous transaction. There was no interruption in the practice of withdrawing the money, the sums misappropriated increased in amount and frequency, and so far as they were indirectly used by Lyon, in his private business by overdrawing his account with the firm. The occurrences were near each other, not many days intervening at any time between the several and separate transactions. All these transactions had intimate relations with the one set forth in the indictment, and tended to prove all were done in pursuance of the scheme and conspiracy devised by the defendant and Bork, and with an intent to to cheat and defraud the city of Buffalo. The rule, as established and laid down in the authorities cited, was not, in my opinion, disregarded, but practically adhered to on the trial.

Upon the question of an intent to cheat and defraud the city, the jury were instructed that under the statute the offense was not complete unless there was an intent to cheat and defraud on the part of the defendant, and that was a question of fact for them to determine upon all the evidence. They were also instructed, that if they should find that there was an intention on the part of the defendant to return the money to the city, that it would not in and of itself prevent a conviction; but if they should find that such an intention did exist on the part of Lyon at the time he received the money, it was evidence in his favor bearing on the question of an intent to cheat and defraud

the city. The learned counsel for the defendant makes the argument, that if there was in fact an intent to repay the city, then there could not exist a criminal intent to cheat and defraud within the spirit and meaning of the statute, and the jury should have been so instructed. This argument, should it prevail, would in effect nullify the statute, and the misappropriation of moneys which the statute intended to prevent and made criminal, might be committed with impunity if the person who is guilty of the misappropriation had enough of the sense of right left to form an intention to return, at some future time, the funds unlawfully abstracted. The abstraction must necessarily precede the restitution. The first will be completed before there is a possibility of commencing the act by which it is to be followed; and thus, whatever may be the purpose of the guilty party ultimately to do, the offense prohibited by the statute will have already been consummated before he can do any act in mitigation of the wrong he has done. It is a fraud in law for a person to appropriate to his own personal object and gain, money or the property of another when the same can only be accomplished by doing an act prohibited by a positive law. The argument presented in behalf of the defendant is not novel. The same proposition has been considered and repudiated by a court of great learning in a case not unlike this in all essential particulars, and it is safe to follow the reasoning of the tribunal referred to as the same is found in the case of Commonwealth v. Tuckerman, 10 *Gray*, 173. See also Commonwealth v. Coe, 115 *Mass*. 481.

The defendant gave proof showing that previous to the disclosure of the transactions proved on the trial, he possessed a good character and enjoyed the reputation of being a correct and upright business man. Upon this evidence the court charged the jury in substance, that such evidence was pertinent upon the question of the defendant's guilt, and should be duly weighed and considered by them; that it might be assumed in disposing of a criminal accusation, that a person who possessed a good character would not commit an offense of the nature of the one imputed to the defendant; that good character was not a controlling item of evidence, but was to be considered with all the other evidence in the case, in disposing of the

question of the defendant's guilt; that it should have greater weight where the evidence upon which the people relied for a conviction was circumstantial than where the evidence was direct and positive, and that it was for the jury to determine how much force and reliance should be placed upon the same, in the face of all the other evidence in the case. The defendant's counsel thereupon asked the court further to charge the jury, " that evidence of good character is not only of value in doubtful cases, but that it may raise a doubt in the mind of the jury where, without it, none would exist." The court declined further to charge the jury upon the subject.

In the charge as given no limitation whatever was placed upon the force and effect which the jury should give to the evidence of good character. The jury were left free to apply and use this evidence upon every question of fact which they were to pass upon. It was not in the province of the court to say to the jury, as requested, that the evidence of good character might raise a doubt in their minds, as to the guilt or innocence of the defendant. People *v.* Lamb, 2 *Keyes*, 378; Cancemi *v.* People, 16 *N. Y.* 501.

If the views already expressed are sound, then it is unnecessary to consider the many exceptions taken during the trial to the receipt of evidence, for they only bring up in another form the questions discussed.

The motion for a new trial is dismissed.