## Court of General Sessions—New York County.

August, 1901.

## THE PEOPLE v. JOHN D. HERLIHY.

(35 Misc. 711.)

1. INDICTMENT OF POLICE CAPTAIN FOR FAILING TO SUPPRESS HOUSE OF ILL-FAME.

    A captain of police is clothed with ample powers and discretion for the detection and suppression of crime and the arrest of offenders in his precinct. He is required to give the same degree of attention and diligence to the performance of his duties as an ordinarily prudent man bestows on his own concerns, and if he willfully omits or neglects to do that which by law he ought to have done, he commits a crime.

2. SAME—CHARGING MORE THAN ONE CRIME.

    An indictment which charges that defendant omitted to perform a duty, by failing to inspect 109 houses of ill-fame in his district, specifying them by street and number, charges but one crime.

3. CODE CRIM. PRO., SECTION 275.

    Pleading "a house of ill-fame" has a sufficiently legally defined meaning. It is not necessary to plead the particular acts of lewdness.

4. SAME.

    *But* there should be sufficient particularity as to each house by a distinct, separate allegation as to time, place and description, as would, under the general issue, warrant the introduction of testimony as to the character and the acts committed therein, and an indictment against a police captain for neglect of duty which groups 109 houses of ill-fame, by street and number, in one designation, covering a period of fourteen months, is demurrable as not containing a plain and concise statement of the act constituting the crime charged.

Demurrer to indictment charging defendant with neglect of duty.

VOL. XVI—3

Abraham I. Elkus and Carlisle J. Gleason, for demurrer.

Eugene A. Philbin, District Attorney, opposed.

GOFF, R. : The indictment accuses the defendant of the crime of "wilfully omitting to perform a duty enjoined upon him by law." In substance it states the act constituting the crime to be that the defendant was a captain of police in command of the Twelfth Precinct of the city of New York; that he was charged by law with the duty of observing and inspecting houses of ill fame, repressing all unlawful and disorderly conduct and practices therein, enforcing the law and preventing violations thereof; that from the 22nd day of September, 1899, to the 18th day of November, 1900, there were continuously, openly and notoriously kept and maintained in the precinct, while he was in command, one hundred and nine houses of ill fame, described by street and number, where unlawful and disorderly practices were committed, and where common prostitutes and disorderly persons resorted and resided, and that he continuously and willfully neglected to perform the duty enjoined upon him by law, to use and exercise all proper and effective means to repress and prevent the keeping and maintenance of those houses, but on the contrary permitted them to exist and continue without any interference or endeavor on his part to enforce the law.

To this indictment the defendant interposes a demurrer on the grounds:

First. That the facts stated do not constitute a crime.

Second. That more than one crime is charged in the indictment, and

Third. That it does not contain a plain and concise statement of the act constituting the crime. Code Crim. Pro., sec. 323.

These grounds will be considered in their order:

First. That the facts stated do not constitute a crime.

By his demurrer the defendant admits all the facts that are well pleaded. What are the facts alleged? (1) That he was

captain of police; (2) that the law enjoined upon him the duty of carefully inspecting all houses of ill-fame and houses where common prostitutes resort or reside, to repress and restrain all unlawful or disorderly practices therein, and to enforce and prevent all violations of law; (3) that during a certain period of time and while he was in command of the Twelfth Precinct there were 109 houses of ill-fame therein kept and maintained openly and notoriously, and (4) that he willfully neglected his duty by permitting such violations of law to continue, and by omitting to take proper and effective means for their repression and prevention.

All of these facts are susceptible of proof, either by legal presumption or testimony of witnesses. Can it be seriously contended that a captain of police is not a public officer, or that he is not in duty bound to enforce the law, or that the maintenance of a house of ill-fame is not a violation of law, or that if houses of ill-fame are notoriously maintained in his precinct it is not his duty to suppress them, or that if he willfully neglects to suppress them he is not guilty of a neglect of duty, or that for such neglect of duty he is not amenable to the law? If these propositions can be successfully maintained there is an end to the prosecution, and, indeed, there is an end to all responsibility of the policeman as a public officer. But such is not the law, for of necessity to the very existence of organized society a public officer is bound to a strict performance of and responsibility for the duties which devolve upon him. It is a rule of general application that every willful disobedience of law enjoining the performance of official duties and every willful neglect of such duties is a crime, and neither corruption nor injurious result need be proved as an essential of the crime. Both the common law and the statute declare this rule to be the law.

In Crouther's case, 1 Cro. Eliz. 654, it was held that an indictment would lie against a constable by reason of his failure "to raise hue and cry" at night immediately upon receiving notice of a burglary just committed. So it was held during the

reign of Queen Anne that "if a man be made an officer by act of Parliament and misbehave in his office he is indictable for it at common law, and any public officer is indictable for misbehavior in his office." Anon., 6 Mod. R. 96.

"Every culpable neglect of duty enjoined on a public officer, either by common law or by statute, is a crime." 1 Russ. Cr. (6th ed.) 419; Roscoe Cr. Ev. 752; 1 Bish. Cr. Law, sec. 913; 2 McClain Cr. Law, sec. 909.

"A man who undertakes a public office is bound to know the law, and to possess himself diligently of all the facts necessary to enable him in a given case to act prudently and rightly. If he do not, and through mistake of law or of fact be guilty of negligence, he commits a penal offense. This seems hard law, but it is essential for the safety of the State." Whart. Cr. Law, sec. 1582.

Some instances where public officers have been held criminally liable for failure to perform or neglect a duty will serve to illustrate the principle enunciated in the text. For failure of commissioners of excise to pass upon a complaint for the revocation of a license (People v. Meakim, 133 N. Y. 214); for willful disregard of duty in granting or refusing licenses (People v. Norton, 7 Barb. 477); for failure of an overseer of the poor to make proper provision for paupers in his charge (State v. West, 14 Lea, 40, and see, also, Cowley v. People, 83 N. Y. 464); for a failure of a mayor to notify a county attorney of the existence of certain liquor saloons of which he had cognizance (State v. Gluck, 49 Kan. 533); for the neglect of a sheriff in permitting a jail to become so filthy as to endanger the health and lives of the prisoners (McBride v. Commonwealth, 4 Bush. [Ky.] 331); for failure of a magistrate to take proper measures for the suppression of a riot (Reg. v. Neale, 9 Car. & P. 431; Res. Pub. v. Montgomery, 1 Yeates [Penn.], 419); for neglect of a constable to detain a street-walker placed in his custody during the night (Rex v. Bootie, 2 Bur. 864), and for not arresting a prisoner on a magistrate's warrant

(Reg. v. Johnson, 11 Mod. 62) ; for failure of a town marshal to prosecute a crime committed in his presence (Shaw v. City of Macon, 21 Ga. 280) ; for failure of a game warden to arrest when he had knowledge of a violation of law (State v. Darling, 89 Maine, 400) ; for failure of a chief of police to interfere with a mob (Hopewell v. State, 1899, 22 Ind. App. 489) ; for the neglect of a governor of the East India Company to take proper measures for the mobilization of troops and the furnishing of supplies (King v. Holland, 5 T. R., D. & E. 607).

A case in the Appellate Division of the Supreme Court contains a very forcible and significant judicial expression of the law as to the duty of a captain of police. Captain Eakins was dismissed from the force by the commissioners on a charge of neglect of duty in failing to suppress houses of ill-fame in his precinct. On review by certiorari the court said : "The first step on the part of the prosecution was to prove the existence of a number of houses of prostitution and assignation within the Fifteenth Precinct. . . . And it must be assumed in the further consideration of this case that the commissioners found that the houses were disorderly. This fact being found, it was still necessary, in order to charge the relator with neglect of duty, that it should appear either that he had knowledge of the existence of crime in his precinct and failed to make reasonable effort to prevent it, or that, if he did not have such knowledge, with reasonable diligence he could have obtained evidence of criminal conduct, and failed to do so." People ex rel. Eakins v. Roosevelt, 16 App. Div. 364.

In Weiss v. Herlihy, 23 App. Div. 608, the court say : "It is the duty . . . of a captain of police, to prevent all violations of law in his precinct, and restrain them so far as possible, and, if he is unable to prevent such violations of law, to arrest the offenders and, if possible, bring them to punishment. . . . It is made his duty not only to arrest offenders, but for the purpose of preventing the crime, to observe carefully and inspect this place at all times of the day and night. . . . So long as

the duty of preventing crime is imposed upon the captain of police, he certainly must be vested with a broad discretion as to the strictness of the inspection. It is his duty to make it so strict that the violations of law cannot take place."

By section 322 of the Penal Code the keeping of a house of ill-fame is declared to be a misdemeanor. Section 315 of the Greater New York Charter says: "It is hereby made the duty of the police department and force, at all times of the day and night, and the members of such force are hereby thereunto empowered to . . . carefully observe and inspect all . . . houses of ill-fame or prostitution, and houses where common prostitutes resort or reside; . . . and to repress and restrain all unlawful and disorderly conduct or practices therein; enforce and prevent the violation of all laws . . . and to arrest all persons guilty of violating any law . . . for the suppression or punishment of crimes."

Section 117 of the Penal Code declares that "A public officer, or person holding a public trust or employment, upon whom any duty is enjoined by law, who willfully neglects to perform the duty, is guilty of a misdemeanor." Section 154 declares that "Where any duty is or shall be enjoined by law upon any public officer, or upon any person holding a public trust or employment, every willful omission to perform such duty . . . is punishable as a misdemeanor." The two sections are similar in language except that in one (117) the phrase "willfully neglects to perform the duty" is used, while the other (154) reads "willful omission to perform such duty." These expressions are reciprocally equivalent and expressive of the legislative intent.

In construing the Code or an indictment thereunder the term "neglect" imports a want to such attention or the probable consequence of the act or omission as a prudent man ordinarily bestows in acting in his own concerns. Code Crim. Pro., sec. 713.

It is urged that a willful neglect of duty is a delinquency, that for such delinquency the defendant is responsible only for a vio-

lation of the rules of the police department, and that he is relieved from criminal liability by the exception contained in section 154, which reads: "Where no special provision shall have been made for the punishment of such delinquency." The words "special provision," as used here, mean special provision of law, and there are no other special provisions of law declaring a willful neglect of duty a crime and prescribing for its punishment than are contained in sections 117 and 154.

Section 250 of the Greater New York Charter confers upon the police board the power to prescribe rules and regulations for the government and discipline of the police force. Section 272 vests in the board a discretion that on a conviction of a member of the force of any legal offense or neglect of duty or violation of rules or conduct unbecoming an officer, he may be punished by fine or dismissal.

The specification of "neglect of duty" in this section is not a special provision of law providing for its punishment as a crime. A neglect of duty may be an absence from post or roll-call or failure to properly patrol. Each of these acts of omission may be a delinquency, but it is not a crime. If a policeman commits a burglary on his post, is he to be protected from the consequences of his crime because he is liable to punishment by the department for conduct unbecoming an officer? Neglect of official duty may be a violation of the rules of the department, but it is also a crime against the people, and cannot be prosecuted or punished as such by the police department, but only by the people.

In King v. Bembridge, 3 Doug. 327, it was contended, in a criminal action against an accountant in the public service for failure to disclose misappropriations, that the negligence complained of constituted at most a civil wrong. Lord MANSFIELD, in his opinion, says: "The law does not consist of particular cases, but of general principles which are illustrated and explained by these cases. Here there are two principles applicable, first, that a man accepting an office of trust concerning the

public, especially if attended with profit, is answerable criminally to the King for misbehavior in office. . . . Second. Where there is a breach of trust, fraud or imposition in a matter concerning the public, though as between individuals it would only be actionable, yet as between the King and the subject it is indictable. That such should be the rule is essential to the existence of the country."

In State v. West, supra, a commissioner of the poor was indicted for failure to provide for certain paupers. It was urged that section 1958 of the Code provided the only punishment for the offense, which was removal from office, and it was held that the power of removal was but an incident of the power of appointment.

Neither law nor reason exists which excepts a police officer from the responsibility which attaches to every person in the public service. Knowledge of the duties of the office and diligence in their performance are conditions imposed when the office and its emoluments are accepted. A captain of police is clothed with ample powers and discretion for the detection and suppression of crime and the arrest of offenders in his precinct. He is required to give the same degree of attention and diligence to the performance of his duties as an ordinarily prudent man bestows on his own concerns, and if he willfully omits or neglects to do that which by law he ought to have done, he commits a crime.

Second. That more than one crime is charged in the indictment.

Sections 278 and 279 of the Criminal Code, read together, prescribe that "The indictment must charge but one crime and in one form" except that it may be charged in separate counts to have been committed in a different manner or by different means—and where the acts complained of may constitute different crimes, such crimes may be charged in separate counts." The essential of these two sections is that the indictment must

charge but one crime. The exceptive and permissive clauses are not pertinent to the point under consideration.

In substance, it is claimed by the demurrer that the indictment charges the defendant with willfully omitting to suppress 109 houses of ill-fame in his precinct; that willfully omitting to suppress one house is a crime; that willfully omitting to suppress 109 houses constitutes 109 crimes, and that, therefore, 109 crimes are charged.

At first blush there appears to be much force in this contention, and it is urged with a great deal of acumen and plausibility. It must be conceded that the willful neglect to suppress any one house of ill-fame is a crime, but for the purposes of pleading it does not follow that the willful neglect to suppress 109 house makes 109 crimes. The difficulty is that the mind is distracted from the true test by the multiplicity of the acts alleged.

The gravamen of the crime charged is neglect of official duty. While it is true that one act of omission or commission may constitute neglect, it is also true that neglect may consist of a series of acts of omission in failing to perform a duty, or in not doing things which one ought to and has the power to do. A single act of omission may indicate carelessness, but a series of acts may indicate design. Failure to suppress one house of ill-fame is a neglect of duty, and yet that act consists of several subordinate but constituent acts, such as failure to obtain evidence, to apply for a warrant, to make arrest, to warn the public, etc. These are all evidentiary acts of the main act charged. So, where the charge of neglect of duty is predicated on several acts of omission, these acts are but evidence of the neglect, and it makes no difference if the acts are in themselves criminal, because punishment is inflicted not for the acts, but for the neglect. The law says neglect of duty is a misdemeanor, and no matter how many separate and independent acts which may of themselves be misdemeanors that may be given in evidence to prove the charge, only one crime can be proven, and that the one charged. As-

sume that the indictment charged the crime to consist in failure to suppress one house of ill-fame, it would not be open to the criticism of charging more than one crime, and if the theory of the defense be carried to a logical conclusion it would. If the indictment alleged that the house of ill-fame existed for 100 days, and that the defendant failed to suppress it during that time, every day of the existence of that house was a violation of law, and every day of its existence that he failed to suppress it he was guilty of neglect of duty; consequently he was guilty 100 times. But that is not the true theory, nor is it the law.

Where an offense is of a continuing character, such as bawdy-house, common gaming-house, nuisance, etc., it may be pleaded in a continuando, and only one crime is charged. The statute says: "Where any duty is enjoined by law, every willful omission to perform such duty," etc., and by the charter (supra) it is made the duty of the police to inspect all houses of ill-fame. Manifestly the duty is not performed unless all houses are inspected, and if they be not inspected there is an omission to perform a duty. The singular number includes the plural, and the plural the singular. Penal Code, sec. 718, subd. 16.

The indictment charges precisely what the law declares, that the defendant omitted to perform a duty enjoined upon him by law in failing to inspect houses of ill-fame in his precinct, numbering 109. These houses are specified by street and number, as evidentiary acts to prove that he did omit to perform a duty.

A conspiracy to commit a number of crimes and the commission of overt acts appropriate to each of them may be included in one count of the indictment. Bish. Cr. Pl. & Pr., sec. 437, subd. 2; State v. Kennedy, 63 Iowa, 200; People v. Wright, 9 Wend. 193.

In Kane v. People, 8 Wend. 203, defendant was indicted for neglect of duty as director of a turnpike company. The indictment contained two counts, alleging different acts of neglect, and it was held good on affirmation of judgment. "If one offense alone is charged, it is not sufficient to render an indictment

double that another offense is stated in setting out the manner in which it was committed, or the different means employed." People v. Casey, 72 N. Y. 393.

Several acts, each in itself criminal, may be charged in one count, if they are of the same nature, and so connected as to constitute one criminal transaction. Reg. v. Bowen, 1 Cox C. C. 88; Commonwealth v. Eaton, 15 Pick. 273.

People v. Flaherty, 162 N. Y. 538, is not an authority against this rule. There the act charged was statutory rape. Evidence of several acts of intercourse was given, and the court said this was proper to show the disposition of the parties and as a circumstance of corroboration; but it was not proper to charge in the indictment any but one act. The reason of this is plain, and that the act in itself constituted the crime, and, therefore, only one act could be charged. The case in principle is not parallel.

"No matters, however multifarious, will constitute duplicity in an indictment or information, provided that all such matters taken together constitute but one connected charge." People v. Harris, 7 N. Y. Supp. 773. In this case (General Term) it was held that an indictment which charged the defendant with delivering watered milk on two successive days at a cheese factory charged but one crime. A count charging an endeavor to commit two crimes is good because the crime charged is the endeavor. Arch. Pl. & Pr. (Lond. Ed.) 54.

An indictment for a willful breach of duty against an officer of the East Indian Company for failure to take proper military measures and furnish supplies for the support of the company's ally was held sufficient by Lord KENYON, who said that, as the facts upon which the duty was founded all arose while the defendant was one of the council, he was bound to take notice of them. King v. Holland, supra.

A count in an indictment for robbery may charge assault and larceny, and for larceny the stealing of several articles, and for libel that it was published and caused to be published, and for

forgery that the writing was forged and caused to be forged. Any one of these several acts is a crime, but the including of them as descriptive of the crimes charged does not make the indictment double, for there is but one crime charged in each case.

An indictment for arson contained five counts, each of which charged the firing of a house of a different owner, and that one fire burned them all, and it was held that but one crime was charged. Reg. v. Trueman, 8 C. &. P. 727.

In Woodford v. People, 62 N. Y. 117, where an indictment charged the defendant with setting fire to thirty-five dwelling-houses owned by different persons, it was objected that it was bad, for duplicity in charging more than one offense. CHURCH, Ch. J., said: "It charges the burning of a number of houses by a single act, at one time and place. . . . A conviction or acquittal upon such an indictment would be a bar to an indictment for burning any other house burned by the same act. There was but one crime committed in respect to all the dwelling-houses."

In Bork v. People, 91 N. Y. 5, ANDREWS, Ch. J., said: "Where an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together, and charge the defendant to have committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others." People v. Davis, 56 N. Y. 795.

While I have been unable to find the case of an indictment charging neglect of duty in the precise form adopted here, yet in principle and from analogy of adjudication cases I am led to the conclusion that, either at common law or under our system of pleading, the indictment charges but one crime; that but one judgment can be pronounced and one punishment inflicted, and that the defendant can plead the indictment in bar to any subsequent prosecution for any of the acts alleged therein.

Third. That it does not contain a plain and concise statement of the act constituting the crime.

The language of section 275 of the Criminal Code, upon which this ground of demurrer rests, is, "The indictment must contain a plain and concise statement of the act constituting the crime, without unnecessary repetition." A prime requirement of this rule of pleading is that there must be a statement of the act, governed by two qualities—plainness and conciseness. To be plain it must be definite and obvious to the understanding; to be concise it must be comprehensively expressed. It would be very difficult to formulate a rule as to what is unnecessary repetition, as each indictment would have to be measured by its own peculiarities as well as by the vocabulary and rhetorical taste of the pleader.

Pleading "a house of ill-fame" is not pleading a legal conclusion. The phrase has a sufficiently legally defined meaning, Betts v. State, 93 Ind. 375.

The gist of the offense of keeping it is that it is kept for lewd purposes. It is not necessary to plead the particular acts of lewdness. 2 Hawk C. 25, sec. 575; U. S. v. Royall, 3 Cranch, 618. It is sufficient to make a general allegation under the statute. Commonwealth v. Ashley, 2 Gray, 356. If the statute (Penal Code, sec. 322) merely said a person who keeps a house of ill-fame is guilty of a misdemeanor, it would be a sufficient definition and description of the crime. The fact of keeping a house of ill-fame legally imports the crime committed, and where the act itself imports the wrong it is sufficient to charge it in general terms. It is sufficient to charge that a person is a nightwalker, because that term has a fixed meaning in the law. State v. Dowers, 45 N. H. 543. It is a statutory offense, for, though it was an offense at common law, its prohibition by the statute makes it one of statutory creation. Mason v. State, 42 Ala. 545. A general form of averment under this statute has been held sufficient. People v. Hulett, 39 N. Y. St. Rep. 646.

The indictment alleges "that there were certain houses of ill-fame in which unlawful and disorderly conduct and practices were committed, and divers common prostitutes and disorderly

persons resorted to and resided therein and solicited men," etc. While each of these acts may be an offense, yet they all flow from and are included in the generic term "house of ill-fame" and are properly included. An indictment charging the keeping of a house of ill-fame, resorted to by persons for the purpose of prostitution or lewdness, only charges one offense, that of keeping a house of ill-fame. State v. Toombs, 79 Iowa, 741; People v. Hulett, supra. In so far as the indictment alleges the existence of houses of ill-fame, I consider it sufficient, but in so far as the allegations affect the defendant I consider it insufficient.

A form of pleading has been adopted which I consider dangerous to establish as a precedent, and which is a radical departure from safe and well-recognized rules. It is alleged that there were 109 houses of ill-fame, by street and number, in the precinct. They are grouped together and characterized by one designation, covering a period of time of fourteen months. When it is remembered that the proving of the existence of any one house of ill-fame out of the 109 on any one day during that period of time would be sufficient to carry the case to the jury, it will be manifest what an advantage the prosecution would have and what a corresponding disadvantage would weigh upon the defendant. This form may be defended from the standpoint of logical construction, but according to the principles which govern criminal pleading I consider it defective. A defendant is entitled to know what he has to meet, and the channel through which this information is to be conveyed is the indictment, which must contain a plain statement of the act. To be plain it must be definite and certain. While the language is plain, the statement is indefinite.

I do not agree with the contention that the pleading relating to each house should be as precise as if it were against the keeper of that house. It is not necessary. It never is necessary to plead the subsidary acts with as much particularity as the principal act. But there should be sufficient particularity as to each house, by a distinct and separate allegation as to time,

place and description, as would under the general issue warrant the introduction of testimony as to its character and the acts committed therein, and as would enable a court to pass judgment as matter of law on any one allegation,, as if it were the only one pleaded. The question is not as to the number of houses designated, but it is that the allegation concerning each house shall be so specific that it can stand alone as a valid pleading. It is not clear to me that the name of the keeper of the house should be set forth. It is true that the names of third persons must be averred whenever they serve to particularize the offense. 1 Chitty Cr. Law, 212-214.

As in People v. Burns, 25 N. Y. St. Rep. 97, where the indictment accused the defendant with selling milk of a kind prohibited by statute, but failed to name the purchaser, Justice Ingalls said:

"To constitute such sale there must have been a purchaser," and held the omission fatal. But it will be seen that it was not the keeping of the milk in which the offense lay; it was the sale, and in order to be a sale there had to be a purchaser. The act could not be complete without a purchaser, and, therefore, the act constituting the crime could not be plainly set forth without naming the purchaser.

Charging a justice of the peace with misconduct at a particular trial, it is not essential to state the names of the persons tried. State v. Foy, 98 U. C. 744.

But a house of ill-fame is of itself a nuisance, without regard to the keeper. It is only when a person is being prosecuted that the name is material. The offense consists in rem and not in personam.

The gist of the inquiry here would be, "Was there a house of ill-fame at a certain place?" and not, Who kept the house? But it is not necessary to pass upon the question now. Careful pleading ought to set forth the names, if known, and if unknown that fact should be stated.

I conclude that the indictment does not contain a plain and

concise statement of the act constituting the crime charged, and I, therefore, allow the demurrer; but inasmuch as in my opinion the objection on which the demurrer is allowed may be avoided in a new indictment, the district attorney may, if he be so advised, resubmit the case to another grand jury.

Demurrer allowed.