Hyman Barshay, J.
The defendants were indicted for manslaughter in the second degree by reason of culpable negligence. The indictment is in six counts, each identical in form and substance except for the name of the deceased. It will thus suffice to set forth only the first count:
The Grand Jury of the County of Kings, by this indictment, accuse the defendants of the crime of manslaughter in the second degree, committed as follows:
Heretofore and on or about April 12th, 1956, the State of New York, Department of Public Works, awarded a public contract to Horn Construction Co., Inc., a corporation existing under and by virtue of the laws of the State of New York, for the construction of a portion or segment of a state arterial highway known and designated as the Brooklyn-Queens Expressway, in the Borough of Brooklyn, County of Kings, State of New York.
Thereafter, and on or about May 7th, 1956, the said Horn Construction Co., Inc., entered into a sub-contract with Service Excavators, Inc., a corporation existing under and by virtue of the laws of the State of New York, for the excavation work of a portion of the highway contracted for by the Department of Public Works as aforesaid, to wit, an area bounded by Grand Street Extension, South 4th Street, Rodney Street and Marey Avenue, in the Borough of Brooklyn, County of Kings.
The defendants, Louis Joseph, as Executive Vice-President and Chief Engineer for the Horn Construction Co., Inc., Martin A. Schlam, as Supervising Engineer for the said company and Vincent Pedo he, as Foreman for the said company, and Anthony D’Aquila, as Vice-President and Supervising Engineer for Service Excavators, Inc., Salvatore Garifo, as Foreman and Superintendent for Service Excavators, Inc., individually and collectively, did have the entire care, charge, control, supervision and responsibility of the contract and the excavation work aforesaid, and it thereupon became and remained their continuing duty and obligation to cause the said work to be performed in a reasonably prudent and safe manner, and with due regard for the lives, safety and security of the public in the general area and in the immediate vicinity thereof.
The said excavation work was performed in a manner intrinsically and inherently dangerous to the life, limb and safety of the public situated in the general area and in the immediate vicinity thereof, and was at all times herein mentioned of such a nature and character as to constitute a deceptive trap and peril to the unwary, in that, to wit:
The said work necessarily involved and did consist of an excavation approximately 18 to 20 feet below the level of the street; the walls or embankments of the said excavation were unsafe, infirm and unstable in that they consisted substantially of insecure layers of sand, and mixtures of sand, stones, fine grained silts and clay, commonly known as hardpan, the repose and stability of which could be readily disturbed, weakened and undermined by external stresses, forces and factors of divers nature and origin, of which the defendants did have and should have had prior knowledge, and which the defendants could and should have reasonably and with due diligence foreseen; in addition, the angle of slope or incline of the said walls or embankments so created, caused, suffered and permitted to remain by the said defendants in the excavation aforesaid was hazardous and imminently dangerous to the lives, limbs and safety of others, in that it was substantially perpendicular in form and nature, to wit: at approximately 75 to 80 degrees from the horizontal. That in view of the facts and circumstances aforesaid, the walls or embankments in various parts of the excavation aforesaid were and remained in imminent danger of cave-in or collapse, and constituted an *765 imminent peril and threat to the lives, limbs and security of others at, near, or within the excavation aforesaid. Moreover, to the knowledge of the defendants, and of each of them, for a period prior to and including the 12th day of June, 1956, and without hindrance or interference on their part, or of each of them, the said excavation site was commonly entered upon by numerous children, and was openly and regularly used and adapted by the said children as a play and recreation area thereat. And the said defendants, and each of them, being wholly indifferent to the imminent perils and dangers aforesaid, and being grossly and culpably negligent in their duty in that behalf, and in reckless and wanton disregard for the lives, safety and security of others, did on or about, prior to and including the 12th day of June, 1956, feloniously and wilfully create, or cause to be created and permitted to exist, said inherently dangerous condition and deceptive trap to the unwary, as more fully hereinbefore set forth; and did feloniously and wilfully fail, neglect and omit to take any reasonable steps or precautionary measures to prevent, guard against or minimize the risk of the cave-in or collapse of the walls or embankments aforesaid; and the said defendants and each of them, did on or about, prior to, and including the 12th day of June, 1956, feloniously and wilfully fail, neglect and omit to take, apply or provide any precaution whatever to guard or protect the children then and there present within the excavation aforesaid from the risk to life and limb to which the said children were then and there fully exposed, in that, among other things, the defendants, and each of them, did fail, neglect and omit to hire or employ watchmen, guards or other personnel to keep children away from, or at a safe distance from the area of danger aforesaid, and did fail, neglect and omit to take any other reasonable measures to keep the children from entering or remaining in the said area, or to protect them from the imminent danger as aforesaid; and in that, the defendants did fail, neglect and omit to provide necessary and suitable barricades, fences or enclosures to protect and safeguard the children from the danger aforesaid; and in that, the defendants did feloniously and wilfully neglect and omit to provide or furnish necessary bracing, sheeting, piling or shoring, or to take any other reasonable or necessary precaution appropriate thereto to avert or minimize the danger of any collapse or eave-in of the said wall or embankment, or to protect the children from such imminent danger and deceptive peril aforesaid.
That due wholly to the gross and culpable negligence of the said defendants, and each of them, as aforesaid, and as a direct and natural consequence of the peril aforesaid which the defendants, and each of them, could and should have reasonably foreseen and with prudence and due diligence could and should have reasonably averted or attempted to avert, and solely by reason thereof, and while the said defendants so feloniously and wilfully acted, and neglected and omitted to act, take or provide all or any of the necessary safeguards or the precautionary measures as aforesaid, the said wall or embankment of the excavation at a point situated at or near Grand Street Extension and Marcy Avenue, in the Borough of Brooklyn, County of Kings, did on June 12th, 1956 suddenly collapse and eave-in while a group of children were then and there playing at or below and beneath thereof as a direct consequence of which Anna Ortiz, eight years of age, was buried thereunder, and did suffer asphyxiation and death by reason thereof.
The defendants demurred on three grounds, each of which is separately set forth and determined.
The first ground of the demurrer is that 11 the Grand Jury by which it was founded, had no legal authority to inquire into the charge (Sec. 323 Code Crim. Pro., subdiv. 1).”
*766 In support of this contention, it is urged that the prosecution of this case lies exclusively with the Attorney-General of the State of New York. The deaths in the case arose as a result of a cave-in during the construction of a State highway running through Kings County. The Superintendent of Public Works has the duty of supervising and controlling the construction of State highways (Highway Law, § 40). He is authorized to request the Attorney-General to “ prosecute every person charged by [him] with the commission of an indictable offense in violation of the law, which such officer is specially required to execute, or in relation to matter connected with his department.” (Executive Law, § 63, subd. 3.) Soon after the occurrence herein, the Attorney-General complied with the superintendent’s request, conducted an investigation and filed his report with the Superintendent of Public Works on July 2, 1956. The Attorney-General limited his activities to an investigation but did not, however, assume the prosecution of anyone connected with this matter. Members of his staff thereafter actively participated in and co-operated with the District Attorney of Kings County, who commenced an independent investigation immediately for presentation of all the facts to the Grand Jury which ultimately found this indictment. It is obvious, from such action, that the Attorney-General did not assume jurisdiction to prosecute in this case as he was authorized to do pursuant to subdivision 3 of section 63 and section 70 of the Executive Law.
The law mandates the Grand Jury, “ to inquire into all crimes committed or triable in the county,” (Code Grim. Pro., § 245). The District Attorney has the duty, “ to attend [the Grand Jury] for the purpose of examining witnesses in their presence, or of giving them advice upon any legal matter, and of issuing subpoenas or other process for witnesses ” (Code Grim. Pro., § 256). Had the Attorney-General chosen to prosecute this matter and not limited himself to a mere investigation of it, he undoubtedly would have assumed exclusive jurisdiction (Executive Law, § 63), and the District Attorney would have been pre-empted from further proceedings. In any event, this ground is not available to the defendants on a demurrer to an indictment. Such ground is available only when “ it appears upon the face thereof” (Code Grim. Pro., § 323). None of the aforesaid matters appear on the face of this indictment. The court is, therefore, precluded from considering it.
The second ground set forth in the demurrer is “ that the indictment does not conform substantially to the requirements of Sec. 275 and Sec. 276 of the Code Grim. Pro. (Sec. 323 Code Grim. Pro., subdiv. 2)
*767 An indictment meets the requirements of the law when it contains : (1), the title of the action specifying the name of the court to which the indictment is presented, and the names of the parties; (2), a plain and concise statement of the act constituting the crime, without unnecessary repetition (Code Grim. Pro., § 275). The form of an indictment is provided for by section 276 of the Code of Criminal Procedure. Its purpose is to notify the defendant of the nature of the charge against him to the end, that he may properly prepare his defense and to identify the charge against him so that conviction or acquittal may prevent a subsequent charge for the same offense (People v. Williams, 243 N. Y. 162). If the indictment meets the aforesaid requirements, it will suffice. In People v. Herlihy (35 Misc. 711, 722, revd. 66 App. Div. 534, affd. 170 N. Y. 584) it was held that “ It would be very difficult to formulate a rule as to what is unnecessary repetition, as each indictment would have to be measured by its own peculiarities as well as by the vocabulary and rhetorical taste of the pleader.” This indictment could easily have been shortened by eliminating certain descriptive and conclusatory phrases contained therein, but none of them are prejudicial to a degree that a trial court will not be enabled to amply protect the defendants. Surplusage will not vitiate an otherwise valid indictment (Lohman v. People, 1 N. Y. 379; People v. Farson, 244 N. Y. 413). The court is of the opinion that the indictment conforms substantially to the requirements of section 275 and section 276 of the Code of Criminal Procedure.
The third ground of the demurrer is that ‘ ‘ the facts stated do not constitute a crime.” (Code Grim. Pro., § 323, subd. 4.)
Section 1052 of the Penal Law defines manslaughter in the second degree as follows: ‘ ‘ Such homicide is manslaughter in the second degree, when committed without a design to effect death; * * * By any act, procurement or culpable negligence of any person, which, according to the provisions of this article, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree.” “ Culpable negligence ’ ’ is distinguished from negligence from which civil liability may follow, in that, to constitute culpable negligence the act or omission to act must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily, prudent or careful man under the circumstances as to be incompatible with the proper regard for human life. {People s. Angelo, 246 N. Y. 451.)
Judged by the aforesaid standards, the court has examined this indictment to determine whether or not on the face thereof, *768 the facts stated constitute a crime. Stripped of all the several repetitious, conclusatory and descriptive phrases, there are sufficient allegations remaining in the indictment which, in this court’s opinion, constitute a crime. The demurrer on this ground is consequently overruled.
For all of the aforesaid reasons, the demurrer is on each and every ground overruled. The defendants are directed to appear for pleading at the earliest date that can he mutually agreed upon between the District Attorney and counsel for the defendants. Submit order.