THE PEOPLE OF THE STATE OF NEW YORK ex rel. SALVATORE SOL-LAZZO, Relator, against J. VERNEL JACKSON, as Warden of Clinton Prison, Defendant.

Supreme Court, Special Term, Clinton County, April 9, 1954.

692

*Samuel Bonom* for relator.

*Nathaniel L. Goldstein, Attorney-General (Harold A. Jerry* of counsel), for defendant.

RYAN, J. The relator, Salvatore Sollazzo, through his attorney, seeks an order pursuant to the provisions of article 77 of the Civil Practice Act releasing him from imprisonment under two commitments issued out of the Court of General Sessions, New York County, dated November 19, 1951.

The relator, Sollazzo, was indicted on or about April 13, 1951, by a New York County Grand Jury for the crime of conspiracy in violation of section 580 of the Penal Law of the State of New York, and the crime of bribery of a participant

in an amateur game in violation of section 382 of the Penal Law.

The indictment contained thirty counts, the first twenty-nine of which charged violation of section 382 of the Penal Law, and the thirtieth count charged conspiracy in violation of section 580.

On July 12, 1951, the relator plead guilty to all counts contained in the indictment, except counts numbered 28 and 29, which specific counts were subsequently, and on the 23d day of June, 1952, dismissed.

On November 19, 1951, Sollazzo was sentenced to imprisonment on Count No. 2 in said indictment for a term of from five to ten years; and on Count No. 5 contained in said indictment to a term of three to six years, the sentences to run consecutively. Sentence on the remaining counts in the indictment to which the relator had plead guilty was suspended.

Section 382 of the Penal Law of the State of New York, insofar as it pertains to this relator, provides as follows: '' Whoever gives, promises or offers to any professional or amateur * * * basketball player * * * who participates or expects to participate in any professional or amateur game or sport * * * or participant or prospective participant in any such game, contest or sport, any valuable thing with intent to influence him to lose or try to lose or cause to be lost or to limit his or his team's margin of victory * * * in a * * * basketball game * * * or any professional or amateur sport, or game, in which such player or participant * * * is taking part or expects to take part, or has any duty or connection therewith, is guilty of a felony, punishable by imprisonment for not less than one year, nor more than ten years and by a fine of not more than ten thousand dollars ''.

Count 2 of the indictment returned against this relator charged as follows:

'' And the Grand Jury aforesaid, by this indictment, further accuse said defendants of the crime of Bribery of a Participant in an Amateur Game, committed as follows:

'' The defendant Sollazzo, aided and abetted by the defendant Gard, in the County of New York, from on or about October 1, 1950 to on or about December 5, 1950, promised, offered and gave to Sherman White, an amateur basketball player on the Long Island University basketball team, who expected to and did participate in an amateur basketball game in New York County, on December 2, 1950, between his team and

Kansas State, the sum of One Thousand ($1,000), with intent to influence him to lose, try to lose, cause to be lost and limit his team's margin of victory in said game.''

Count number 5 of the indictment returned against the defendant reads as follows:

'' And the Grand Jury aforesaid, by this indictment, further accuse said defendants of the crime of Bribery of a Participant in an Amateur Game, committed as follows:

'' The defendant, Sollazzo, aided and abetted by the defendant Gard, in the County of New York, from on or about October 1, 1950, to on or about December 20, 1950, offered, promised and gave to Sherman White, an amateur basketball player on the Long Island University basketball team, who expected to and did participate in an amateur basketball game in New York County on December 7, 1950, between his team and Denver, the sum of One Thousand Dollars ($1,000), with intent to influence him to lose, try to lose, cause to be lost and limit his team's margin of victory in said game ''.

It is the contention of the relator in this proceeding that whereas the statute reads in the disjunctive, the indictment against him reads in the conjunctive. He maintains that the acts of which he was accused as set forth in the indictment were inconsistent; that a person could not be guilty of inducing by bribery the losing of the game, and at the same time be guilty of inducing by bribery the winning of the game by a limited margin of victory. More concisely, that a player could not be bribed to lose a game, and at the same time be bribed by the same individual to win the game by a limited margin of victory.

The background of this very reprehensible practice belies the contention of this relator. Gamblers could, and evidently did, wager with some assurance, after bribing the star of a team to throw the game. However, with four other men on the team, and the possibility of substitutions through injury or otherwise, gamblers could and did cover their possible losses by wagering on the margin of victory by bribing the high scorer to diminish his efforts.

That the indictment in this case was properly drawn in the conjunctive is, in the judgment of this court, completely reconcilable with the rule laid down in *People* v. *Arcamone* (167 Misc. 122, 124): '' If the crime, however, is charged in the conjunctive form, the defendant is placed on notice that the prosecutor intends to prove the commission of the crime by

*all* the means enumerated in the indictment even though, in fact, only one may be established against him. (*People ex rel. Schuler* v. *Schatz,* 50 App. Div. 544; *People* v. *Kane,* 43 id. 472.) ''

Also cited in the brief supplied by relator's counsel is the case of *People* v. *Kane* (43 App. Div. 472, 475–476): '' It is evidently essential, under the provisions of this statute, for the pleader to aver facts showing that the person charged was an officer of the city government; that he willfully violated or evaded a provision of law, or committed a fraud upon the city, or converted public property to his own use, or knowingly permitted another person so to convert it, or by gross or culpable neglect of duty allowed the property of the city to be lost. If the pleader has stated a case showing that the defendant has committed any one of these acts, or all of them if associated by averment proper in form, then he will have made a case which requires the defendant to plead thereto upon the merits.''

The primary objection urged by the People in opposition to this proceeding, is the failure by the relator to challenge the sufficiency or validity of the indictment until after judgment, either by demurrer or other objection, or by a motion in arrest of judgment. This argument remains relatively unanswered in the argument or brief submitted on behalf of the relator. A review of the decisions provides some rather convincing reasons why counsel for the relator is comparatively silent upon this point. The Court of Appeals has laid down the following rule in *People* v. *Willett* (213 N. Y. 368, 375): '' Unless a motion founded upon the indictment and the insufficiency thereof is made before or at the time when the defendant is called for judgment, the objections thereof are waived.''

In *People* v. *Jacoby* (304 N. Y. 33, 41) the court said: '' No appeal lies from a criminal judgment entered on a plea of guilty unless the sentencing court lacked jurisdiction either of the subject matter of the crime adjudged, or of the person of the defendant ''.

In *People* v. *Love* (306 N. Y. 18, 25) the court said: '' Minor defects of this nature in the complaint were waived, in any event, by failure to raise the question at the trial (*People* v. *Wiechers,* 179 N. Y. 459)''.

In *People* v. *Wiechers* (179 N. Y. 459, 461–462) the court said: '' An indictment cannot be attacked upon appeal unless some foundation was laid therefor before final judgment was rendered. An accused person may take advantage of a defective

indictment by demurring thereto before the trial, by objecting thereto during the trial, or by a motion in arrest of judgment made after the trial. The function of a demurrer, which was not resorted to by the defendant, is to defeat the indictment without a trial, whenever it appears upon the face thereof that it is subject to one or more of five objections named in the statute. (Code Crim. Pro., § 323.) These objections can be taken only by demurrer, ' except that the objection to the jurisdiction of the court over the subject of the indictment, or that the facts stated do not constitute a crime, may be taken at the trial, under the plea of not guilty, and in arrest of judgment.' * * * The statute does not provide how either of the two objections last named shall be taken at the trial and, hence, the ordinary practice of raising the question by objection and exception necessarily applies. A motion in arrest of judgment is made after a plea of guilty, or after the trial has ended in a verdict of guilty, but no such motion was made in the case now before us. (Id. § 467.) If a defendant with all these chances open to him omits to question the indictment before the trial, during the trial or after the trial and makes no objection to the form or sufficiency thereof until the argument of an appeal from the judgment of conviction, he cannot then be heard upon the subject.''

At page 464: '' A practice act like the Code of Criminal Procedure would complicate rather than simplify the practice, if it were held that an indictment could be successfully attacked for the first time after judgment and upon appeal, when the evidence was sufficient to warrant a conviction for the crime purporting to be charged but which it is claimed was not sufficiently charged. Even if the indictment is not strong enough to withstand a direct attack in the manner provided by law, the judgment entered thereon would be good as a plea in bar to another prosecution for the offense which was at least colorably charged and was clearly proved. Both at common law and by statute a verdict cures such imperfections of form in an indictment as do not tend to prejudice substantial rights upon the merits.''

The Appellate Division in *People* v. *Hammersmith* (229 App. Div. 385, 387) said: '' As has been said, there was no demurrer to the indictment nor motion to set it aside; neither was there a motion in arrest of judgment. Section 331 of the Code of Criminal Procedure provides that the objection that the facts stated in an indictment do not constitute a crime may be taken

at the trial under a plea of not guilty and in arrest of judgment, and section 467 of the Code of Criminal Procedure provides that a motion in arrest of judgment may be founded on any of the defects in the indictment mentioned in section 331. Defendant having failed to demur, and having made no motion founded upon the indictment and the insufficiency thereof, his objections thereto were waived. (*People* v. *Willett,* 213 N. Y. 368; *People* v. *Wiechers,* 179 id. 459.) ''

In *People* v. *Portner* (278 App. Div. 787) the court said: '' Defendant made no objection to the indictment before judgment (Code Crim. Pro., § 331) and consequently waived the objection presented on this appeal.''

It is at once apparent that the issue herein raised by counsel for the relator is not reviewable upon an appeal. It therefore logically follows that there is no legal basis upon which this court can entertain this application under article 77 of the Civil Practice Act.

The writ is dismissed, and an order may be submitted in compliance herewith.